# EXHIBIT 4



# Premises Pollution Liability
# Portfolio Insurance Policy

**ACE American Insurance Company**
**Philadelphia, Pennsylvania**

## *Declarations*

**This Policy is issued by the stock insurance company identified above (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

**THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

| Policy No.: PPI G71190511 001 | Renewal of: NEW |
|---|---|

| Item 1. | First Named Insured: | Aqua America, Inc. |
|---|---|---|
| | Address: | 762 West Lancaster Avenue<br>Bryn Mawr, PA 19010 |

**Coverages Purchased: Coverage A. -** ☒ **Coverage B. -** ☒ **Coverage C. -** ☒
("X" Indicates Coverage Purchased)

| Item 2. | **Policy Period:**<br>(Local Time of the Address Shown in Item **1.**, above.) | **Policy Inception Date:**<br>October 01, 2018 12:01 A.M. | **Policy Expiration Date:**<br>October 01, 2021 12:01 A.M. |
|---|---|---|---|
| **Item 3.** | **Limits of Liability:**<br>In U.S. Dollars | **a.** $10,000,000<br><br>**b.** $20,000,000 | Per Pollution Condition or Indoor Environmental Condition Limit of Liability<br><br>Total Policy and Program Aggregate Limit of Liability for all Pollution Conditions and Indoor Environmental Conditions |
| **Item 4.** | **Self-Insured Retention / Deductible Period:**<br>In U.S. Dollars | **a.** $50,000<br><br>**b.** 3 | Per Pollution Condition or Indoor Environmental Condition<br><br>Days Per Pollution Condition or Indoor Environmental Condition |

| Item 5. | Retroactive Dates: | |
|---|---|---|
| | | **Coverage A -** See Endorsement |
| | | **Coverage B -** See Endorsement |
| | | **Coverage C -** See Endorsement |
| | | If **"FULL RETRO"** is indicated in the Retroactive Date column above, then retroactive coverage is afforded pursuant to this Policy for that specific exposure, subject to any other corresponding exposure-specific Retroactive Date, below, or added to this Policy by endorsement. |
| | | *Exposure-Specific Retroactive Dates* - ☐ Not Applicable |
| | | Transportation – October 1, 1997 |
| | | Covered Operations – See Endorsement |
| | | Non-Owned Disposal Sites - October 1, 1997 |

| Item 6. | **Premium:**<br>In U.S. Dollars | $860,058.00 |
|---|---|---|
| | **Total Premium:** | $860,058.00 |
| | | (The entire amount of this premium shall be 0% minimum earned as of the first day of the Policy Period indicated in Item **2.**, above) |

| Item 7. | **Producer:**<br>Name & Address | SIMKISS & BLOCK<br>2 PAOLI OFFICE PARK<br>PAOLI, PA 19301 |
|---|---|---|

| Item 8. | **a. Notice of Claim or Pollution Condition** | **b. All other Notices** |
|---|---|---|
| **Notices** | CHUBB Environmental Risk Claims Manager<br>CHUBB USA Claims<br>P.O. Box 5103<br>Scranton, PA 18505-0510<br>Fax: (866) 635-5687<br><br>First Notice Fax: (800) 951-4119<br>First Notice Email:<br>CasualtyRiskEnvironmentalFirstNotice@ chubb.com | Environmental Risk Underwriting Officer<br>CHUBB Environmental Risk<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia, PA 19106 |
| | **Environmental Incident Alert - 24 Hour<br>Emergency Response Hotline** | **1-888-310-9553** |

| Item 9. | Covered Locations: | See definition of "Covered Location"<br><br>☐ if checked here, schedule of Covered Locations is designated via endorsement. |

**Policy Form No.** PF-45006a (01/17) Premises Pollution Liability Portfolio Insurance Policy

**Endorsements and Notices Attached at Policy Issuance:**

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 1 | PF-32461 (11/10) | Schedule of Named Insureds (Broad – Majority Owned Chain) Endorsement |
| 2 | PF-45008 (09/14) | Schedule of Additional Insureds (Broad Vicarious Only) Endorsement |
| 3 | PF-30901 (09/10) | Schedule of Insured Contracts Endorsement |
| 4 | PF-40453a (09/15) | Asbestos and/or Lead-Based Paint Coverage (Bodily Injury, Property Damage and Remediation Costs For Inadvertent Disturbance Only) Endorsement (PPL Portfolio) |
| 5 | PF-44894 (09/14) | Anti-Stacking Endorsement |
| 6 | PF-44917 (09/14) | Dedicated Defense Aggregate Limit Endorsement |
| 7 | PF-44957 (09/14) | Notice of Cancellation Amendatory (Generic Time Frame) Endorsement |
| 8 | PF-44968 (09/14) | Prior Claims Exclusionary (Broad) Endorsement |
| 9 | PF-45013 (09/14) | Automatic Acquisition and Due Diligence (Fungi) Endorsement |
| 10 | PF-45022 (09/14) | Business Interruption Coverage Limitations Endorsement |
| 11 | PF-45044a (01/17) | Itemized Coverages Only Amendatory (Varied Retroactive Dates) Endorsement |
| 12 | PF-45045 (09/14) | Location-Specific Retroactive Dates Endorsement |
| 13 | PF-45052 (09/14) | Off-Site Operations Exclusionary Endorsement |
| 14 | MS-206796_7 (05/17) | Other Insurance Amendatory (Primary - Non-Contributory) Endorsement |
| 15 | MS-208616_1 (02/18) | Products Pollution Coverage Endorsement |
| 16 | MS-208616_2 (08/17) | Definition Of Responsible Person Amendatory Endorsement |
| 17 | MS-209191_1 (09/17) | Named Insured versus Named Insured Amendatory Endorsement |
| 18 | MS-263089.1 (08/18) | Definition of Remediation Costs Amendatory (Lead-Containing Response or Upgrades) Endorsement |
| 19 | MS-52832 (01/16) | Hydraulic Fracturing Exclusionary Endorsement |
| 20 | LD-2S83a (2/01) | Pennsylvania Changes - Cancellation and Nonrenewal |
| 21 | PF-23728a (01/15) | Terrorism Risk Insurance Act Endorsement |
| 22 | TRIA11c (01/15) | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 23 | ALL-21101 (11/06) | Trade or Economic Sanctions Endorsement |

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 24 | CC-1K11h (03/14) | Signatures |
| | ALL-27476 (06/09) | Disclaimer Notice Commercial Lines Deregulation |
| | IL 09 10 07 02 | Pennsylvania Notice |
| | ALL-20887a (03/16) | Chubb Producer Compensation Practices & Policies |
| | IL P 001 01 04 | U. S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.**

JOHN J. LUPICA, President

**DATE:** _____October 01, 2018_____
MO/DAY/YR

_____AUTHORIZED REPRESENTATIVE_____



# Premises Pollution Liability
# Portfolio Insurance Policy

**This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the Insurer*).**

**THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.**

Throughout this Policy the words *the Insurer* shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section **V., DEFINITIONS**.

In consideration of the payment of the premium and in reliance upon all statements made in the Application to this Policy, including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

## I. INSURING AGREEMENTS

Solely to the extent that the coverages below are identified on the Declarations to this Policy as being underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured" for "loss", in excess of the "self-insured retention" or deductible period (as applicable), resulting from:

### A. FIRST-PARTY REMEDIATION COSTS COVERAGE (Coverage **A.**)

"First-party claims" arising out of: **1)** a "pollution condition" on, at, under or migrating from a "covered location"; **2)** an "indoor environmental condition" at a "covered location"; or **3)** a "pollution condition" resulting from "transportation", provided the "insured" first discovers such "pollution condition" or "indoor environmental condition" during the "policy period". Any such "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period".

The coverage afforded pursuant to this Coverage **A.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

### B. FIRST-PARTY EMERGENCY RESPONSE COVERAGE (Coverage **B.**)

"First-party claims" arising out of: **1)** a "pollution condition" on, at, under or migrating from a "covered location"; **2)** an "indoor environmental condition" at a "covered location"; or **3)** a "pollution condition" resulting from "covered operations" or "transportation", provided the "insured" first discovers such "pollution condition" or "indoor environmental condition" during the "policy period". Any such "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period".

The coverage afforded pursuant to this Coverage **B.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

### C. THIRD-PARTY CLAIMS COVERAGE (Coverage **C.**)

"Claims" arising out of a "pollution condition" or an "indoor environmental condition", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **C.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item **5.** of the Declarations, if applicable, and prior to the expiration of the "policy period".

## II. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

**A.** It is expressly agreed that the Insurer's obligation to pay for any covered "loss" (exclusive of "business interruption loss") pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition". Under no circumstances, including, but not limited to, an "insured's" insolvency and/or bankruptcy, shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

Notwithstanding the foregoing, if the "insured" agrees with the Insurer to use "mediation" to successfully resolve any "claim" for which "legal defense expenses" have been incurred, then the "self-insured retention" applicable to the "pollution condition" or "indoor environmental condition" that corresponds to such "claim" shall be reduced by fifty percent (50%), subject to a maximum reduction in the "self-insured retention" of twenty-five thousand dollars ($25,000).

In addition to the foregoing, it is expressly agreed that the Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has also borne the full amount of the "business interruption loss" within the deductible period identified in Item **4.** of the Declarations to this Policy.

**B.** One "self-insured retention" shall apply to all "loss" (exclusive of "business interruption loss") arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition". If the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" triggers coverage pursuant to multiple coverage parts, or otherwise involves multiple exposures that have been assigned exposure-specific "self-insured retention" amounts by endorsement to this Policy, the single largest of the associated "self-insured retention" amounts identified in: **1)** Item **4.** of the Declarations; **2)** any Supplemental Coverage added by endorsement to this Policy; or **3)** any exposure-specific "self-insured retention" endorsement identified as part of this Policy, shall apply to all "loss" and other covered exposures arising out of such "pollution condition" or "indoor environmental condition", except for any "catastrophe management costs" that are assigned an exposure-specific "self-insured retention" by endorsement to this Policy, if any (hereinafter Catastrophe Management-Specific SIR Obligation). Amounts within any such Catastrophe Management-Specific SIR Obligation shall be independent of, and shall not otherwise erode, the single largest "self-insured retention" applicable to all other covered exposures arising out of the same "pollution condition" or "indoor environmental condition" as contemplated herein.

**C.** One deductible period shall apply to all "business interruption loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition".

**D.** Subject to Subsections **E.** and **F.**, below, the most the Insurer shall pay for all "loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" is the Per Pollution Condition or Indoor Environmental Condition Limit of Liability identified in Item **3.a.** of the Declarations to this Policy.

**E.** Subject to Subsection **D.**, above, and Subsection **F.**, below, **$250,000** shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "indoor environmental conditions".

**F.** Subject to Subsections **D.** and **E.**, above, the Total Policy and Program Aggregate Limit of Liability identified in Item **3.b.** of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "loss".

**G.** If the Insurer or an affiliate has issued pollution liability coverage afforded on a discovered and reported basis or claims-made and reported basis consistent with coverage afforded pursuant to this Policy in one or more policy periods, and a "pollution condition" or "indoor environmental condition" is first discovered and reported to the Insurer, or a "claim" is first made and reported to the Insurer with respect to a "pollution condition" or "indoor environmental condition", in accordance with the terms and conditions of this Policy, then:

    **1.** Any continuous, repeated, or related "pollution condition" or "indoor environmental condition" that is subsequently reported to the Insurer during later policy periods shall be deemed to be one "pollution condition" or "indoor environmental condition" discovered during this "policy period"; and

    **2.** All "claims" arising out of:

        **a.** The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was discovered during this "policy period"; or

        **b.** The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was the subject of a "claim" first made and reported in accordance with the terms and conditions of this Policy,

shall be deemed to have been first made and reported during this "policy period" and no other policy shall respond.

## III. DEFENSE AND SETTLEMENT

**A.** The Insurer shall have the right and, subject to the "self-insured retention" obligation, the duty to defend the "insured" against a "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend the "insured" ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Subsection **E.,** below.

**B.** The Insurer shall have the right to select legal counsel to: **1)** represent the "insured" for the investigation, adjustment, and defense of any "claims" covered pursuant to this Policy; and **2)** assist the "insured" with clarifying the extent of, and to help minimize, any "first-party remediation costs". Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld.

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer shall pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: **1)** have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; **2)** maintain suitable errors and omissions insurance coverage; **3)** be located within a reasonable proximity to the jurisdiction of the "claim"; and **4)** agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

**C.** The "insured" shall have the right and the duty to retain a qualified environmental consultant or "catastrophe management firm" to: **1)** perform any investigation and/or remediation of any "pollution condition" or "indoor environmental condition" covered pursuant to this Policy; or **2)** perform "catastrophe management services" covered pursuant to this Policy, respectively. The "insured" must receive the consent of the Insurer prior to the selection and retention of such consultant or "catastrophe management firm", except in the event of a "first-party claim" that results in "emergency response costs".

**D.** "Legal defense expenses" reduce the Limits of Liability identified in the Declarations to this Policy, and, unless specifically stated otherwise herein, any applicable Limits or Sublimits of Liability identified in any endorsement hereto. "Legal defense expenses" shall also be applied to the "self-insured retention".

**E.** The Insurer shall present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend shall end. Thereafter, the "insured" shall defend such "claim" independently and at the "insured's" own expense. The Insurer's liability shall not exceed the amount for which the "claim" could have been settled if the Insurer's recommendation had been accepted, exclusive of the "self-insured retention".

## IV. COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall only apply to "pollution conditions" or "indoor environmental conditions" located, and "claims" made, within the United States of America.

## V. DEFINITIONS

**A.** **"Additional insured"** means any person or entity specifically endorsed onto this Policy as an "additional insured", if any. Such "additional insured" shall maintain only those rights that are specified by endorsement to this Policy.

**B.** **"Adverse media coverage"** means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

**C.** **"Bodily injury"** means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom, and any prospective medical monitoring costs that are intended to confirm any such physical injury, illness or disease.

**D.** **"Business income"** means:

**1.** Net profit or loss, before income taxes, including "rental income" from tenants, that would have been realized had there been no "business interruption";

**2.** The "insured's" continuing operating and payroll expense (excluding payroll expense of officers, executives, department managers and contract employees);

**3.** Costs incurred by the "insured" as rent for temporary premises when a portion of a "covered location" becomes untenantable due to a "pollution condition" or "indoor environmental condition" and temporary premises are required to continue the "insured's" operations. Such rental costs cannot exceed the fair rental value of the untenantable portion of the "covered location" immediately preceding the "pollution condition" or "indoor environmental condition".

**E.** **"Business interruption"** means the necessary partial or complete suspension of the "insured's" operations at a "covered location" for a period of time, which is directly attributable to a "pollution condition" or "indoor environmental condition" to which Coverage **A.** of this Policy applies. Such period of time shall extend from the date that the operations are necessarily suspended and end when such "pollution condition" or "indoor environmental condition" has been remediated to the point at which the "insured's" normal operations could reasonably be restored.

**F.** **"Business interruption loss"** means:

**1.** "Business income";

**2.** "Extra expense"; and

**3.** "Delay expense".

**G.** **"Catastrophe management costs"** means reasonable and necessary expenses approved by the Insurer, in writing, except for those expenses incurred during the same seven (7) day period associated with "emergency response costs", which have been incurred by the "insured" for the following:

**1.** Responsive consulting services rendered by a "catastrophe management firm";

**2.** Printing, advertising, mailing of materials of public relations materials;

**3.** Travel by directors, officers, employees or agents of the "insured", or the "catastrophe management firm", incurred at the direction of a "catastrophe management firm";

**4.** To secure the scene of a "pollution condition" or "indoor environmental condition"; or

**5.** Sums advanced to third-parties directly harmed by the "pollution condition" or "indoor environmental condition" for their medical costs; funeral costs; psychological counseling; travel expenses costs; temporary living costs or other necessary response costs,

but solely in those instances when, in the good faith opinion of a "key executive", the associated "pollution condition" or "indoor environmental condition" has resulted in or is reasonably likely to result in: **a)** "loss" (exclusive of "catastrophe management costs") that will exceed the applicable "self-insured retention"; and **b)** a need for "catastrophe management services" due to "adverse media coverage".

**"Catastrophe management costs"** do not include any "legal defense expense".

**H.** **"Catastrophe management firm"** means any firm that is approved, in writing, except for firms retained for the same seven (7) day period associated with "emergency response costs", by the Insurer to perform "catastrophe management services" in connection with a "pollution condition" or "indoor environmental condition".

**I.** **"Catastrophe management services"** means advising the "insured" with respect to minimizing potential harm to the "insured" from a covered "pollution condition" or "indoor environmental condition" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured", and its services or products.

**J.** **"Claim"** means the written assertion of a legal right received by the "insured" from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage" or "remediation costs" arising out of "pollution conditions" or "indoor environmental conditions" to which this insurance applies.

**K.** **"Covered location"** means:

    **1.** Any location owned, operated, managed, leased or maintained by the "first named insured", or any "named insured" affiliated by common ownership with the "first named insured", upon the inception date identified in Item **2.** of the Declarations to this Policy;

    **2.** Any location that meets the prerequisites to coverage identified in the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any; and

    **3.** Any other location specifically scheduled as a "covered location" by endorsement attached to this Policy, if any.

**L.** **"Covered operations"** means any operations that are identified in the Application and any supporting documentation provided to the Insurer by the "first named insured" prior to the inception date identified in Item **2.** of the Declarations to this Policy, which are performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

**M.** **"Delay expense"** means, for a "covered location" under development where a "pollution condition" or "indoor environmental condition" causes a delay in the completion or development during the "business interruption", any of the following expenses:

    **1.** Additional interest on money the "insured" has borrowed to finance the construction, development, or remediation of a project at a "covered location";

    **2.** Additional realty taxes and other assessments;

    **3.** Additional advertising or promotional expense;

    **4.** Additional expenses incurred resulting from the renegotiation of leases, including associated usual and customary legal representation expense; and

    **5.** Additional engineering, architectural, and consulting fees.

**N.** **"Emergency response costs"** means "first-party remediation costs" incurred within seven (7) days following the discovery of a "pollution condition" or "indoor environmental condition" by a "responsible person" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

    **1.** A "pollution condition" or "indoor environmental condition" on, at, under or migrating from a "covered location"; or

    **2.** A "pollution condition" resulting from "covered operations" or "transportation",

provided such "emergency response costs" are reported to the Insurer within fourteen (14) days of when that "responsible person" first became aware of such "pollution condition" or "indoor environmental condition".

**O.** **"Environmental indemnity obligations"** means an "insured's" obligations to defend or indemnify a third-party with respect to a "pollution condition" or "indoor environmental condition" to which this insurance otherwise applies, provided that such defense or indemnity obligation is explicitly included within a contract identified or described on the Schedule of Insured Contracts Endorsement attached to this Policy, if any.

**P.** **"Environmental law"** means any Federal, state, commonwealth, municipal or other local law, statute, ordinance, rule, guidance document, regulation, and all amendments thereto (collectively Laws), including voluntary cleanup or risk-based corrective action guidance, or the direction of an "environmental professional" acting pursuant to the authority provided by any such Laws, along with any governmental, judicial or

administrative order or directive, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "indoor environmental condition".

**Q.** **"Environmental professional"** means a licensed professional that is:

    **1.** Mutually agreed upon by the Insurer and the "insured", except with respect to "emergency response costs"; and

    **2.** Qualified by licensure, knowledge, skill, education and training to perform an assessment, prepare an investigation protocol, interpret the results and prepare a scope of work to remediate a "pollution condition" or "indoor environmental condition".

**R.** **"Extended reporting period"** means the additional period of time in which to report a "claim" first made against the "insured" during or subsequent to the end of the "policy period".

**S.** **"Extra damages"** means punitive, exemplary or multiplied damages, and civil fines, penalties and assessments, but solely to the extent that the punitive, exemplary or multiplied damages, and civil fines, penalties and assessments:

    **1.** Are insurable under applicable law; and

    **2.** Arise out of a "pollution condition" or "indoor environmental condition" that results in "bodily injury", "property damage", "remediation costs" or "first-party remediation costs" to which this insurance otherwise applies.

**T.** **"Extra expense"** means costs incurred by the "insured" due to a "pollution condition" or "indoor environmental condition" that are necessary to avoid or mitigate any "business interruption". Such costs must be incurred to actually minimize the amount of foregone "business income" that would otherwise be covered pursuant to this Policy.

**U.** **"First named insured"** means the person or entity as identified in Item **1.** of the Declarations to this Policy. The "first named insured" is the party responsible for the payment of any premiums and the payment of, or evidencing payment of, any applicable "self-insured retention" amounts. The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

**V.** **"First-party claim"** means the first-party discovery of a "pollution condition" or an "indoor environmental condition" during the "policy period" by an "insured" to which this insurance applies.

**W.** **"First-party remediation costs"** means reasonable and necessary "remediation costs" incurred by an "insured" resulting from a "first-party claim". If no applicable laws exist that govern the remediation, investigation, quantification, monitoring, removal, disposal, treatment, neutralization, or immobilization of such "pollution condition" or "indoor environmental condition" in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of an "environmental professional".

    **"First-party remediation costs"** also means reasonable and necessary expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" or "indoor environmental condition". Such expenses shall not include costs associated with betterments or improvements, except to the extent that such betterments or improvements are exclusively associated with the use of building materials which are environmentally superior to those materials which comprised the original damaged property. Any such environmentally superior material must be: **a)** certified as such by an applicable independent certifying institution, where such certification is available; or **b)** in the absence of any such certification, based solely on the judgment of the Insurer and at its sole discretion.

**X.** **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

**Y.** **"Government action"** means action taken or liability imposed by any Federal, state, commonwealth, municipal or other local government agency or body acting pursuant to the authority of "environmental law".

**Z.** **"Illicit abandonment"** means:

    **1.** Solely with respect to coverage for "covered locations", the intentional placement or abandonment of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including contaminated soil,

contaminated silt, contaminated sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, including "low-level radioactive waste", "mixed waste" and medical, red bag, infectious and pathological wastes, on, at or into a "covered location", by a person or entity that:

    **a.** Is not an "insured"; and

    **b.** Is not affiliated by common ownership with an "insured", and,

  **2.** Solely with respect to coverage for "transportation", the intentional placement or abandonment of any waste, goods, materials or product beyond the boundaries of a "covered location" during "transportation" by a person or entity that:

    **a.** Is not an "insured"; and

    **b.** Is not affiliated by common ownership with an "insured".

**"Illicit abandonment"** does not mean any such placement or abandonment, above, which takes place, in whole or in part, prior to the inception date identified in Item **2.** of the Declarations of this Policy.

AA. **"Indoor environmental condition"** means:

  **1.** The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or

  **2.** The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure,

provided that such "fungi" or *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

BB. **"Insured"** means the "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, employee of, temporary or leased worker of, or, with respect to a limited liability company, a member of, any of the foregoing while acting within the scope of his or her duties as such.

CC. **"Key executive"** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, general partner or managing partner (if the "insured" is a partnership), managing member (if the "insured" is a limited liability company) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by the "first named insured", approved by the Insurer, and identified by endorsement to this Policy.

DD. **"Legal defense expense"** means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured":

  **1.** In the investigation, adjustment or defense of "claims"; or,

  **2.** Solely with respect to those instances where the "insured" has secured the prior consent of the Insurer, except in the event of a "first-party claim" that results in "emergency response costs", in order to clarify the extent of, minimize, and effect resolution of, any obligation to incur "first-party remediation costs".

EE. **"Loss"** means:

Coverage **A.**

  **1.** "First-party remediation costs" and associated "legal defense expense";

  **2.** "Catastrophe management costs"; and,

  **3.** Solely with respect to "pollution conditions" on, at, under or migrating from, or "indoor environmental conditions" at, a "covered location", "business interruption loss".

Coverage **B.**

  **4.** "Emergency response costs" and associated "legal defense expense"; and,

  **5.** Solely with respect to "pollution conditions" resulting from "covered operations", "catastrophe management costs".

Coverage **C.**

  **6.** A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense".

Supplemental Coverages

Any other liability or first-party exposure insured pursuant to any Supplemental Coverage added by endorsement to this Policy.

**FF. "Low-level radioactive waste"** means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

**GG. "Mediation"** means a conciliatory, non-binding attempt to resolve a "claim" using a neutral, third-party facilitator.

**HH. "Mixed waste"** means waste containing both radioactive and hazardous components as defined pursuant to United States law within the Atomic Energy Act and the Resource Conservation and Recovery Act, as either may be amended.

**II. "Named insured"** means the "first named insured" and any other person or entity specifically endorsed onto this Policy as a "named insured", if any. "Named insureds" shall maintain the same rights pursuant to this Policy as the "first named insured", except for those rights specifically: **1)** reserved to the "first named insured" as defined herein; or **2)** limited by endorsement to this Policy.


**JJ. "Natural resource damage"** means injury to, destruction of, or loss of, including the resulting loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state, commonwealth or local government, or any Native American Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

**KK. "Non-owned disposal site"** means:

**1.** Any treatment, storage, transfer, disposal or recycling site or facility located within the United States of America that has not at any time been owned or operated, in whole or in part, by any "insured", which receives, or has historically received, a "named insured's" waste for disposal; provided that such treatment, storage, transfer, disposal or recycling site or facility:

    **a.** Was properly permitted and licensed pursuant to "environmental law" to accept the "named insured's" waste at the time of such disposal by the Federal, state, commonwealth, municipal or other local government agencies or bodies with applicable jurisdiction;

    **b.** Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the "named insured's" waste was received for disposal; and

    **c.** Has not, prior to the time the "named insured's" waste was received for disposal, been identified on the United States EPA (CERCLA) National Priorities List or pursuant to any functional equivalent of that list made by Federal, state, commonwealth, municipal or other local government agency or body with applicable jurisdiction pursuant to "environmental law", or

**2.** Any treatment, storage, transfer, disposal or recycling site or facility specifically identified on a Schedule of Non-Owned Disposal Sites Endorsement attached to this Policy, if any.

**LL. "Policy period"** means:

**1.** The period of time specifically identified in Item **2.** of the Declarations to this Policy; or,

**2.** Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item **2.** of the Declarations to the Policy, if any, the period of time following the effective date of such addition through the expiration date of the Policy identified in Item **2.** of the Declarations to this Policy; or

**3.** Any shorter period of time resulting from the cancellation of this Policy.

**MM. "Pollution condition"** means:

**1.** "Illicit abandonment"; or

**2.** The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste

materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

**NN. "Property damage"** means:

**1.** Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

**2.** Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

**3.** Diminished value of tangible property owned by a third-party; or

**4.** "Natural resource damages".

**"Property damage"** does not mean "remediation costs".

**OO. "Remediation costs"** means expenses incurred to investigate, quantify, monitor, remove, dispose, treat, neutralize, or immobilize "pollution conditions" or "indoor environmental conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions" or "indoor environmental conditions".

**PP. "Rental income"** means the actual rental fees lost as a result of a "suspension" of a rented "covered location".

**QQ. "Responsible person"** means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", or any "key executive" of, officer or director of, or partner in, an "insured".

**RR. "Self-insured retention"** means the largest applicable dollar amount among triggered coverage parts identified in Item **4.** of the Declarations to this Policy, or as otherwise designated by endorsement to this Policy, if any.

**SS. "Suspension"** means that part of, or all of, a rented "covered location" is rendered untenantable for the purposes identified to the Insurer prior to the inception date of this Policy due to a "pollution condition" or "indoor environmental condition".

**TT. "Terrorism"** means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

**a.** Use or threat of force or violence; or

**b.** Commission or threat of a dangerous act; or

**c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

**a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology**.**

**UU. "Transportation"** means:

**1.** The movement of an "insured's" waste, materials, goods or products to or from a "covered location" by automobile, aircraft, watercraft, railcar or other conveyance, including any associated loading or unloading thereof, by an "insured", or any third-party vendor engaged by an "insured" in the business of transporting property for hire, provided that any such movement, and associated loading and unloading activities, are performed beyond the boundaries of a "covered location"; or,

**2.** Solely with respect to the use of the term in Section **VI., EXCLUSIONS**, Subsection **Q., Prior Transportation**, of this Policy, the movement of an "insured's" waste, materials, goods or products, including any associated loading or unloading thereof, provided that any such movement, and associated loading and unloading activities, are performed beyond the boundaries of a "covered location".

**VV. "Underground storage tank"** means any tank and associated piping and appurtenances connected thereto which tank has more than ten percent (10%) of its volume below ground.

**"Underground storage tank"** does not mean:

**1.** Any flow-through process tank, including, but not limited to, a septic tank, oil/water separator, sump, or any stormwater or wastewater collection/treatment vessel or system; or

**2.** Any tank that is located below ground, provided that such tank is located on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel.

**WW. "War"** means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

# VI. EXCLUSIONS

This insurance shall not apply to:

## A. Asbestos

"Loss" arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to:

**1.** Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

**2.** Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs", or any associated "extra damages" or "legal defense expense", arising out of asbestos or asbestos-containing materials discovered in soil or groundwater; and

**3.** "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater.

## B. Contractual Liability

"Loss" arising out of or related to liability of others assumed by any "insured" through contract or agreement, except if the liability would have attached to the "insured" in the absence of such contract or agreement.

This exclusion shall not apply to:

**1.** "Environmental indemnity obligations"; or

**2.** Liability for "pollution conditions" or "indoor environmental conditions" assumed by a "named insured" pursuant to a written contract that specifically relates to "covered operations", provided that any such contract was executed and effective prior to the performance of the "covered operations" that resulted in the "pollution condition" or "indoor environmental condition".

## C. Criminal Fines and Criminal Penalties

"Loss" arising out of or related to criminal fines, criminal penalties or criminal assessments.

## D. Divested Property

"Loss" arising out of or related to a "pollution condition" on, at, under or migrating from, or "indoor environmental condition" at, any "covered location":

**1.** That had been sold, abandoned, or given away by any "insured", or was condemned (collectively hereinafter Divested), prior to the "policy period"; or

**2.** When such "pollution condition" or "indoor environmental condition" first commenced after the "covered location" had been Divested.

This exclusion shall not apply to any "pollution conditions" or "indoor environmental conditions" that first commenced, in whole or in part, prior to the effective date that any such "covered location" was Divested as identified on the Divested Properties Coverage Endorsement attached to this Policy, if any.

## E. Employers Liability

"Claims" arising out of or related to "bodily injury" to:

**1.** Any "insured" or any employee of its parent corporation, subsidiary or affiliate:

   **a.** Arising out of, or in the course of, employment by any "insured", its parent corporation, subsidiary or affiliate; or

   **b.** Performing duties related to the conduct of the business of any "insured", its parent corporation, subsidiary or affiliate.

**2.** The spouse, child, parent, brother or sister of any "insured" or employee of its parent corporation, subsidiary or affiliate as a consequence of Paragraph **1.,** above.

This exclusion applies:

**1.** Whether any "insured" may be liable as an employer or in any other capacity; and

**2.** To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

**F. First-Party Property Damage**

"Loss" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by any "insured", or otherwise in the care, custody, or control of any "insured".

This exclusion shall not apply to "first-party remediation costs", "emergency response costs", "business interruption loss" and "catastrophe management costs".

**G. Fraud or Misrepresentation**

"Loss" arising out of or related to:

**1.** Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

    **a.** Within an Application to this Policy; or

    **b.** During the Application or underwriting process prior to the inception date of this Policy,

which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declarations to this Policy; or

**2.** Fraudulent acts or material misrepresentations on the part of any "responsible person" during the "policy period".

**H. Insured's Internal Expenses**

"Loss" arising out of or related to expenses incurred by any "insured" for services performed by its salaried staff and any employees.

This exclusion shall not apply to:

**1.** "Emergency response costs", along with any associated "catastrophe management costs" incurred during that same seven (7) day period; or

**2.** Any other costs, charges or expenses incurred with the prior approval of the Insurer at its sole discretion.

**I. Insured vs. Insured**

"Claims" made by any "insured" against any other "insured".

This exclusion shall not apply to:

**1.** "Claims" initiated by third-parties, including cross claims, counterclaims or claims for contribution by such parties against any "insured"; or

**2.** "Claims" that arise out of an indemnification provided by one "insured" to another "insured" in an "environmental indemnity obligation".

**J. Intentional Non-Compliance**

"Loss" arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or any executive, judicial or administrative order, by, or at the direction of, any "responsible person".

**K. Known Conditions**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" in existence and reported to a "responsible person":

**1.** Prior to the "policy period"; or,

**2.** Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item **2.** of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",

and not affirmatively disclosed to the Insurer in an Application or supplemental underwriting materials provided to the Insurer to secure coverage for such "covered location" pursuant to this Policy.

## L. Lead-Based Paint

"Loss" arising out of or related to lead-based paint.

This exclusion shall not apply to:

**1.** Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

**2.** Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs" , or any associated "extra damages" or "legal defense expenses", arising out of lead-based paint discovered in soil or groundwater; and

**3.** "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of lead-based paint discovered in soil or groundwater.

## M. Material Change in Risk

"Loss" arising out of or related to a change in the use or operations at a "covered location" or "covered operations" performed by or on behalf of a "named insured" that materially increases the likelihood or severity of a "pollution condition", "indoor environmental condition", "claim" or "first-party claim" from the intended uses or operations or "covered operations" identified:

**1.** By the "first named insured" for the Insurer in an Application or supplemental underwriting materials provided prior to the effective date of coverage for such "covered location", if any; or

**2.** Solely with respect to "covered locations" added to the Policy pursuant to an Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement, if any.

This exclusion shall only apply to the "covered location" associated with the change in use or operations or the modified "covered operations" at issue, and shall not limit coverage for other "covered locations" or "covered operations" to which this insurance applies.

## N. Non-Owned Disposal Sites

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" on, at, under or migrating from any treatment, storage, disposal, transfer or recycling site or facility that is not a "non-owned disposal site".

## O. Prior Covered Operations

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" resulting from "covered operations" performed by or on behalf of a "named insured" prior to the applicable Exposure-Specific Retroactive Date identified In Item **5.** of the Declarations to this Policy, if any.

## P. Prior Disposal

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" that are allegedly attributable to a "named insured's" waste being received at the "non-owned disposal site" prior to the applicable Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy, if any.

## Q. Prior Transportation

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" resulting from "transportation" performed prior to the applicable Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy, if any.

## R. Products Liability

"Loss" arising out of or related to any goods or products manufactured, sold, or distributed by any "insured" once possession of such goods or products have been transferred from the "insured".

This exclusion shall not apply to any coverage afforded pursuant to this Policy for a "pollution condition" that first commences during "transportation".

**S. Underground Storage Tanks**

"Loss" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person":

**1.** Prior to the "policy period"; or,

**2.** Solely with respect to "underground storage tanks" situated at "covered locations" added to this Policy during the "policy period", prior to the effective date of coverage for such "covered location".

This exclusion shall not apply to any "underground storage tank" that:

**1.** Is identified on the Schedule of Underground Storage Tanks Endorsement or Schedule of Covered Storage Tanks (Financial Responsibility) Endorsement attached to this Policy, if any; or

**2.** Has been removed or closed-in-place prior to the inception date of this Policy and such removal or closure was conducted in accordance with "environmental law".

**T. Vehicle Damage**

"Claims" or associated "legal defense expense" for "property damage" to any automobile, aircraft, watercraft, railcar or other conveyance utilized for "transportation".

**U. War or Terrorism**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**V. Workers' Compensation**

"Loss" arising out of or related to any obligation of any "insured" pursuant to the Jones Act or any workers' compensation, unemployment compensation, or disability benefits law or related laws.

**VII. REPORTING AND COOPERATION**

**A.** Without limiting the specific requirements contained in any Insuring Agreement or any other exposure-specific reporting requirements contained within this Policy, the "insured" shall also see to it that the Insurer receives notice of any "claim" or "first-party claim", as soon as practicable, by one or more of the following:

**1.** Provide written notice to the address, fax number, or email address identified in Item **8.a.** of the Declarations to this Policy; or

**2.** Provide verbal or electronic notice utilizing the **Environmental Incident Alert 24-hour Emergency Response and Incident Reporting System** by calling the telephone number identified in Item **8.** of the Declarations to this Policy or by using the associated telephone web application, respectively.

Such notice should include reasonably detailed information as to:

**1.** The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "first-party claim";

**2.** The identity of the "covered location";

**3.** The nature of the "claim" or "first-party claim"; and

**4.** Any steps undertaken by the "insured" to respond to the "claim" or "first-party claim".

**B.** The "insured" must:

**1.** As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim";

**2.** Authorize the Insurer to obtain records and other information;

**3.** Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

**4.** Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "loss" to which this Policy may apply; and

**5.** Provide the Insurer with such information and cooperation as it may reasonably require.

**C.** No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer. Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "first-party remediation costs" or "catastrophe management costs" with respect to a "first-party claim", without the prior consent of the Insurer, except for "emergency response costs".

**D.** Upon the discovery of a "pollution condition" or "indoor environmental condition", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental law". The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" or "indoor environmental condition" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so. In that event, any "remediation costs" or "catastrophe management costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

For the purposes of fulfilling the notice requirements contained in the Insuring Agreements to this Policy, notice supplied pursuant to one or more of the verbal or electronic notice mechanisms specifically contemplated in Subsection **A.**, above, or on the Declarations, shall constitute written notice to the Insurer.

## VIII. EXTENDED REPORTING PERIOD

**A.** Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following Cancellation, as described in Subsection **A.**, Paragraph **1.** of Section **IX.**, **GENERAL CONDITIONS**, or nonrenewal of this Policy, in accordance with the terms and conditions described in Subsections **B.** through **D.**, below.

**B.** "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability. "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided. A "claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made and reported on the last day of the "policy period". In addition, if an "insured" first discovers a "pollution condition" or "indoor environmental condition" during the "policy period" and reports such "first-party claim" to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, then such "first-party claim" shall also be deemed to have been first discovered and reported on the last day of the "policy period".

**C.** The "first named insured" shall have a ninety (90) day basic "extended reporting period" without additional charge.

**D.** The "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-three (33) months for not more than two hundred percent (200%) of the full premium identified in Item **6.** of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

   **1.** Makes a written request, to the address identified in Item **8.b.** of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

   **2.** Pays the additional premium when due. If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

### A. Cancellation

   **1.** This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item **8.b.** of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

   **2.** This Policy may be cancelled by the Insurer for the following reasons:

      **a.** Non-payment of premium; or

      **b.** Fraud or material misrepresentation on the part of any "insured",

   by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of

any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" that is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

**3.** In the event of cancellation, the premium percentage identified in Item **6.** of the Declarations to this Policy shall be the minimum-earned premium upon the inception date of this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period". Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

## B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect and sample the "covered locations". The "insured" shall have the concurrent right to collect split samples. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof within three (3) years after the final termination of this Policy.

## C. Legal Action Against the Insurer

No person or organization other than an "insured" has a right pursuant to this Policy:

**1.** To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

**2.** To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

A person or organization may sue the Insurer to recover after an agreed settlement or on a final judgment against an "insured". However, the Insurer shall not be liable for amounts that are not payable pursuant to the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the Insurer, the "insured", and the claimant or the claimant's legal representative.

## D. Bankruptcy

The insolvency or bankruptcy of any "insured", or any "insured's" estate, shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured", or the "insured's" estate, shall not relieve the "insured" of its "self-insured retention" or deductible period obligations pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying insurer.

## E. Subrogation

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. All "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

## F. Representations

By accepting this Policy, the "first named insured" agrees that:

**1.** The statements in the Declarations, schedules and endorsements to, and Application for, this Policy are accurate and complete;

**2.** Those statements and representations constitute warranties that the "first named insured" made to the Insurer; and

**3.** This Policy has been issued in reliance upon the "first named insured's" warranties.

### G. Separation of Insureds

Except with respect to the Limits of Liability, Cancellation condition **2.a.**, and any applicable exclusions, this Policy applies:

**1.** As if each "named insured" were the only "insured"; and

**2.** Separately to each "named insured" against whom a "claim" is made,

and any fraud, misrepresentation, breach of a condition or violation of any duty (hereinafter Breach) by an "insured" shall not prejudice coverage for any "named insured" pursuant to this Policy, provided that: **1)** such "named insured' did not participate in, know of or assist in such Breach; and **2)** such "named insured" is not a parent, subsidiary, partner, member, director, officer of, employer of or otherwise affiliated with, the "insured" that committed such Breach.

### H. Other Insurance

If other valid and collectible insurance is available to any "insured" covering "loss" also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

### I. Changes and Assignment

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

### J. Headings

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

### K. Consent

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

# SCHEDULE OF NAMED INSUREDS (BROAD – MAJORITY OWNED CHAIN) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 1 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities within the scope of the description contained in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy.

### Schedule of Named Insureds

1. All corporations, limited partnerships, limited liability partnerships, limited liability companies or other business entities or associations, other than joint ventures and general partnerships, as now or may hereafter exist during the "policy period", in which the "first named insured", itself, or through a direct chain of underlying majority-owned operating subsidiary corporations, limited partnerships, limited liability partnerships, or limited liability companies, maintains at least a fifty percent (50%) ownership interest (hereinafter Majority-Owned Affiliates); and

2. All joint ventures or general partnerships, as now or may hereafter exist during the "policy period", to which the "first named insured", itself, or one of its Majority-Owned Affiliates, is a party and maintains at least a fifty percent (50%) ownership interest, but only to the extent of the "first named insured's" or Majority-Owned Affiliates' legal responsibility for the liabilities of such joint venture or general partnership.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

# SCHEDULE OF ADDITIONAL INSUREDS (BROAD – VICARIOUS ONLY) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 2 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities within the scope of the description contained in the Schedule of Additional Insureds, below, are "additional insureds" pursuant to this Policy, but solely with respect to their vicarious liability for any "named insured's" direct liability: **1)** arising out of "pollution conditions" on, at under or migrating from a "covered location"; **2)** resulting from "transportation" or **3)** resulting from "covered operations".

### Schedule of Additional Insureds

1. All corporations, limited partnerships, limited liability partnerships, limited liability companies or other business entities or associations, other than joint ventures and general partnerships, as now or may hereinafter exist during the "policy period", in which a "named insured" maintains an ownership interest; and

2. All joint ventures or general partnerships, as now or may hereafter exist during the "policy period", to which a "named insured" is a party, but solely to the extent of the "named insured's" legal responsibility for the vicarious liability of such joint venture or general partnership.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

PF-45008 (09/14)                                                                                                Page 1 of 1

# SCHEDULE OF INSURED CONTRACTS ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>3 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the contracts identified below are listed on the Schedule of Insured Contracts to this Policy:

### SCHEDULE OF INSURED CONTRACTS

1. All written agreements between a "named insured" and a third party provided that the "named insured" assumes liability within such agreements that the "named insured" would not have had in the absence of such agreement and for which coverage is provided under this policy

2. However, such "environmental indemnity obligations" shall not include any contract or agreement in which the "named insured" has indemnified another party for "pollution conditions" that commence after the date of execution of such contract, unless such "pollution conditions" solely arise out of or are the result of the "named insured's" ownership of or operations at the "covered location(s)."

Notwithstanding the fact that the Insurer has agreed to identify the above documents on this Schedule of Insured Contracts Endorsement, the "insured" and the Insurer agree that the explicit terms and conditions of this Policy control their business relationship and that the terms and conditions of this Policy *may not conform* to: **1)** the scope of any environmental insurance requirements agreed to by the parties to the scheduled documents, or as may be referenced in the scheduled documents; or **2)** the scope of any enforceable warranties, hold harmless previsions or indemnification provisions agreed to by the parties to the scheduled documents. Nothing in this Schedule of Insured Contracts is meant to expand coverage beyond the explicit terms and conditions of the Policy as agreed to by the Insurer and "insured".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# ASBESTOS AND/OR LEAD-BASED PAINT COVERAGE (BODILY INJURY, PROPERTY DAMAGE AND REMEDIATION COSTS FOR INADVERTENT DISTURBANCE ONLY) ENDORSEMENT (PPL PORTFOLIO)

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>4 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an **X** indicated in either Section **I.** or Section **II.** of this Endorsement, below, the "insured" and the Insurer hereby agree to the following corresponding changes to this Policy:

**I.** ☒ Section **VI.**, **EXCLUSIONS**, Subsection **A.**, **Asbestos**, of this Policy is hereby deleted in its entirety and replaced with the following:

**A. Asbestos**

Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss", "emergency response" or "legal defense expenses", arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to:

**1.** Third-party "claims" for "bodily injury", and any associated "legal defense expenses", arising out of asbestos or asbestos-containing materials;

**2.** Third-party "claims" for "property damage", and any associated "legal defense expenses", arising out of asbestos or asbestos-containing materials;

**3.** "Remediation costs" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater; and

**4.** "Remediation costs" arising out of asbestos or asbestos-containing materials, provided such "remediation costs" are the result of a "pollution condition" that:

**a.** First commenced during the "policy period"; and

**b.** Does not arise out of or relate to any "pollution conditions" which existed prior to the inception of this Policy; and

**c.** Is unintended and unexpected from the standpoint of the "insured" and, with respect to relevant portions of Coverage **D.** herein, the "foreign subsidiary"; and

**d.** Is sudden, direct, and immediate; and

**e.** Is first discovered by the "insured", or, with respect to relevant portions of Coverage **D.** herein, the "foreign subsidiary", within seven (7) calendar days of commencement; and

**f.** Is reported to the Insurer, as soon as practicable, but in no event more than, twenty-one (21) calendar days following the discovery of such "pollution condition" by the "insured".

Notwithstanding any reporting obligations contained in Section **I., INSURING AGREEMENTS**, or Section **VII., REPORTING AND COOPERATION**, of this Policy, generally, it is a condition precedent to coverage pursuant to this Exception **4.** that the "insured" also provide conclusive documentation of strict compliance with requirements **a.**

through **f.**, above, regardless of whether the Insurer was prejudiced by the failure to meet these requirements.

Notwithstanding anything stated in this Exception **4.**, above, coverage is not afforded pursuant to this Policy for "remediation costs" arising out of or related to asbestos or asbestos-containing materials abatement, removal, or disposal, resulting from, in whole or in part, the maintenance, renovation, or physical improvement of a "covered location" where asbestos or asbestos-containing materials were known to be present by a "responsible person".

**II.** ☒ Section **VI.**, **EXCLUSIONS**, Subsection **N.**, **Lead-Based Paint**, of this Policy is hereby deleted in its entirety and replaced with the following:

**N. Lead-Based Paint**

Claims", "remediation costs", "foreign loss", "ownership loss", "foreign subsidiary loss", "emergency response costs" or "legal defense expenses", arising out of or related to lead-based paint.

This exclusion shall not apply to:

**1.** Third-party "claims" for "bodily injury", and any associated "legal defense expenses", arising out of lead-based paint;

**2.** Third-party "claims" for "property damage", and any associated "legal defense expenses", arising out of lead-based paint;

**3.** "Remediation costs" arising out of lead-based paint discovered in soil or groundwater; and

**4.** "Remediation costs" arising out of lead-based paint, provided such "remediation costs" are the result of a "pollution condition" that:

   **a.** First commenced during the "policy period"; and

   **b.** Does not arise out of or relate to any "pollution conditions" which existed prior to the inception of this Policy; and

   **c.** Is unintended and unexpected from the standpoint of the "insured", and, with respect to relevant portions of Coverage **D.** herein, the "foreign subsidiary"; and

   **d.** Is sudden, direct, and immediate; and

   **e.** Is first discovered by the "insured", or, with respect to relevant portions of Coverage **D.** herein, the "foreign subsidiary", within seven (7) calendar days of commencement; and

   **f.** Is reported to the Insurer, as soon as practicable, but in no event more than, twenty-one (21) calendar days following the discovery of such "pollution condition" by the "insured".

   Notwithstanding any reporting obligations contained in Section **I.**, **INSURING AGREEMENTS**, or Section **VII.**, **REPORTING AND COOPERATION**, of this Policy, generally, it is a condition precedent to coverage pursuant to this Exception **4.** that the "insured" also provide conclusive documentation of strict compliance with requirements **a.** through **f.**, above, regardless of whether the Insurer was prejudiced by the failure to meet these requirements.

Notwithstanding anything stated in this Exception **4.**, above, coverage is not afforded pursuant to this Policy for "remediation costs" arising out of or related to lead-based paint abatement, removal, or disposal, resulting from, in whole or in part, the maintenance, renovation, or physical improvement of a "covered location" where lead-based paint was known to be present by a "responsible person".

**III.** Aggregate Sublimit of Liability (☒ Not applicable if **X** indicated herein)

**$**  shall be the Aggregate Sublimit of Liability for the coverage afforded pursuant to Exception **4.**, of each exclusion above (as applicable).  Therefore, this Aggregate Sublimit of Liability shall be the maximum amount the Insurer shall pay for all "remediation costs" arising out of or related to asbestos, asbestos-containing materials and/or lead-based paint.  This Aggregate Sublimit of Liability shall be subject to the Limits of Liability identified in the Declarations to this Policy.  Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# ANTI-STACKING ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 5 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Multiple Policies**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" that are also covered pursuant to Policy No. CEO G27269400 005 .

All other terms and conditions of this Policy remain unchanged.

_____
JOHN J. LUPICA, President
Authorized Representative

# DEDICATED DEFENSE AGGREGATE LIMIT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Aqua America, Inc. | | | 6 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Dedicated Defense Aggregate Limit of Liability

$ 250,000 shall be the Dedicated Defense Aggregate Limit of Liability applicable to "legal defense expense" covered pursuant to this Policy. Therefore, subject to the exhaustion and further indemnity limit erosion scenario contemplated in Sections **II.** and **III.** of this Endorsement, this Dedicated Defense Aggregate Limit of Liability shall be the maximum amount the Insurer shall pay for all "legal defense expense" arising out of "claims" to which this insurance applies.

**II.** Section **III.**, **DEFENSE AND SETTLEMENT**, Subsection **D.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**D.** "Legal defense expenses" reduce the Dedicated Defense Aggregate Limit of Liability identified in the Dedicated Defense Aggregate Limit Endorsement and, with respect to additional "legal defense expense" incurred following exhaustion thereof, if any, the Limits of Liability identified in Item **3.** of the Declarations of this Policy, along with any applicable Limits or Sublimits of Liability identified in any endorsement hereto. "Legal defense expense" shall also be applied to the "self-insured retention".

**III.** Section **III.**, **DEFENSE AND SETTLEMENT**, of this Policy is hereby amended by addition of the following:

**F.** In the event that the Dedicated Defense Aggregate Limit of Liability identified in the Dedicated Defense Aggregate Limit Endorsement is exhausted, the Insurer shall retain the right and, subject to Subsections **A.** and **E.**, above, the duty to defend the insured" against all ongoing and future "claims" to which this insurance applies. Following such exhaustion event, any "legal defense expense" incurred by the Insurer shall reduce the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any applicable Limits or Sublimits of Liability identified in any endorsement hereto.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# NOTICE OF CANCELLATION AMENDATORY (GENERIC TIME FRAME) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 7 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018  to  10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **A.**, **Cancellation**, Paragraph **2.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**2.** This Policy may be cancelled by the Insurer for the following reasons:

**a.** Non-payment of premium; or

**b.** Fraud or material misrepresentation on the part of any "insured",

by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than ninety (90) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

All other terms and conditions of the Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# PRIOR CLAIMS EXCLUSIONARY (BROAD) ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>8 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Prior Claims**

"Loss" arising out of or related to "claims" made against an "insured" prior to the inception date identified in Item **2.** of the Declarations to this Policy, as applicable (collectively Prior Claims), along with any current or subsequent "claims" made in conjunction with such Prior Claims (e.g., counterclaims, cross-claims or third-party claims made as part of the Prior Claims, any associated appeals of the Prior Claims, any "claims" ultimately consolidated with the Prior Claims, or any "claims" involving different plaintiffs but the same collection of operative facts and/or allegations contained in the Prior Claims).

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# AUTOMATIC ACQUISITION AND DUE DILIGENCE (FUNGI) ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>9 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX., GENERAL CONDITIONS,** of this Policy is hereby amended by addition of the following:

**Automatic Acquisition and Due Diligence**

1. It is understood and agreed that, for an additional premium amount, any property acquired, or newly leased, operated, managed or maintained (but not owned) (hereinafter Non-Owned Locations), by a "named insured" during the "policy period" shall be added to the Policy as a "covered location" upon the closing date of such acquisition, or the effective date of such lease, management, operation or maintenance right or obligation, respectively; provided that the Insurer receives written notice of the property acquisition or Non-Owned Location right or obligation within ninety  (90) days of the closing date of such acquisition or the effective date of Non-owned Location right or obligation, and the "named insured" completes the following environmental due diligence assessment of the property prior to such acquisition or Non-Owned Location right or obligation:

   a. The "named insured" commissions and receives:

      1) A Phase I Environmental Site Assessment report on the property that is performed by a qualified environmental consultant in accordance with the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy; and

      2) A Baseline Survey Process Report in accordance with the ASTM Standard Guide for Readily Observable Mold and Conditions Conducive to Mold in Commercial Buildings: Baseline Survey Process in effect as of the inception of this Policy; or

   b. The "named insured" receives:

      1) A Phase I Environmental Site Assessment report on the property that has been conducted by a qualified environmental consultant for a third-party, provided that the assessment and related report are prepared in accordance with the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy; and

      2) A Baseline Survey Process Report on the property that has been conducted by a qualified environmental consultant for a third-party, provided that the assessment and related report are prepared in accordance with the ASTM Standard Guide for Readily Observable Mold and Conditions Conducive to Mold in Commercial Buildings: Baseline Survey Process  in effect as of the inception of this Policy,

      and that the consultant responsible for the reports has provided the "named insured" with written confirmation that the "named insured", as applicable, is entitled to rely on the conclusions of the reports as if the assessment had been performed on its behalf.

2. If the Phase I Environmental Site Assessment does not identify any Recognized Environmental Conditions, as defined by the ASTM Standard for Environmental Site

Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy (hereinafter RECs), and the Baseline Survey Process Report does not identify "fungi", *legionella pneumophila* or conditions conducive to the growth of "fungi" or *legionella pneumophila* (hereinafter Conducive Conditions) the property shall automatically be added to the Policy as an additional "covered location" effective on the date the "named insured" acquired the property or the effective date of the "named insured's" Non-Owned Location right or obligation.

3. If the Phase I Environmental Site Assessment identifies any RECs, then, before the property may be added to the Policy as a "covered location", the "named insured" must complete a Phase II Environmental Site Assessment. Thereafter, the Insurer shall have thirty (30) days to review and approve the Phase II Environmental Assessment report. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to any RECs identified at the property, and any "pollution conditions" or "indoor environmental conditions" identified during further investigation of such RECs. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date that the property has been added to the Policy as an additional "covered location", and describing the extent of the coverage being afforded with respect to the RECs and associated "pollution conditions" or "indoor environmental conditions" identified at the property.

4. If the Baseline Survey Process Report identifies "fungi", *legionella pneumophila* or Conducive Conditions, then, before coverage may be afforded for "indoor environmental conditions" at the property, the "named insured" must complete additional assessment or remediation activities to address such "fungi", *legionella pneumophila* or Conducive Conditions. Thereafter, the Insurer shall have thirty (30) days to review and approve the results of the additional assessment and/or remediation activities. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to "indoor environmental conditions" or any identified Conducive Conditions at the property. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date and extent of the coverage being afforded with respect to "indoor environmental conditions" or any identified Conducive Conditions at the property.

5. Additional premium for "covered locations" added to this Policy pursuant to Paragraphs **1.** through **4.**, above, shall be calculated using the following rates:

### Additional Premium Schedule

| Acquired Property Type | Additional Premium |
|---|---|
| **Wastewater Treatment Plant (and associated and connected locations)** | **$2,250 (subject to a minimum premium of $1,500 )** |
| **Water Treatment Plants (and associated and connected locations) less than 100 connections** | **$ 500 (subject to a minimum premium of $ 250 )** |
| **Water Treatment Plants (and associated and connected locations) between 100 - 2,000 connections** | **$ 1,000 (subject to a minimum premium of $ 500 )** |
| **Water Treatment Plants (and associated and connected locations) 2,000 - 20,000 connections** | **$ 1,750 (subject to a minimum premium of $ 1,000 )** |
| **Water Treatment Plants (and associated and connected** | **$ as per UW (subject to a minimum premium of** |

| locations) over 20,000 conections | $ as per UW ) |
|---|---|

In the event a property of a type not described in the Additional Premium Schedule, above, is newly acquired, or leased, operated, managed or maintained, by a "named insured", the terms and conditions of this Subsection shall not apply.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## BUSINESS INTERRUPTION COVERAGE LIMITATIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Aqua America, Inc. | | | 10 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an **X** indicated in Sections **I.**, **II.** and/or **III.** of this Endorsement, below, the "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** ☒ **Sublimits of Liability**

**Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability: $ 5,000,000**

**Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability: $ 20,000,000**

The amount that the Insurer shall pay pursuant to this Policy for "business interruption loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" is subject to the Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability and Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability identified above. Therefore, the Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "business interruption loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" to which this insurance applies. Moreover, the Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "business interruption loss" arising out of or related to all "pollution conditions" or "indoor environmental conditions" to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**II.** ☐ **Exclusion**

    **a.** Section **V.**, **DEFINITIONS**, Subsection **DD.**, of this Policy is hereby modified by deletion of the phrase "business interruption loss"; and

    **b.** Section **VI.**, **EXCLUSIONS**, of this Policy is hereby amended to include the addition of the following:

        This insurance also shall not apply to "business interruption loss".

**III.** ☐ **Location-Specific Endorsement Application**

Solely to the extent that there is an **X** indicated in this Section **III.**, above, the "insured" and the Insurer hereby agree that the modifications identified in Sections **I.** and **II.** of this Endorsement only apply to "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, the "covered locations" specifically identified in the Schedule of Covered Locations, below:

### Schedule of Covered Locations

**1.** N/A

All other terms and conditions of the Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# ITEMIZED COVERAGES ONLY AMENDATORY (VARIED RETROACTIVE DATES) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 11 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **I., INSURING AGREEMENTS**, Subsection **A.**, FIRST-PARTY REMEDIATION COSTS COVERAGE, Subsection **B.**, FIRST-PARTY EMERGENCY RESPONSE COVERAGE, and Subsction **C.**, THIRD-PARTY CLAIMS COVERAGE, of this Policy are hereby deleted in their entirety and replaced with the following:

**A.** FIRST-PARTY REMEDIATION COSTS COVERAGE (Coverage **A.**)

"First-party claims" arising out of: **1)** a "pollution condition" on, at, under or migrating from a "covered location"; **2)** an "indoor environmental condition" at a "covered location"; or **3)** a "pollution condition" resulting from "transportation", provided the "insured" first discovers such "pollution condition" or "indoor environmental condition" during the "policy period". Any such "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period".

The coverage afforded pursuant to this Coverage **A.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, during the "policy period", or, if prior to the "policy period", then:

**1.** Solely with respect to "pollution conditions" on, at, under or migrating from a "covered location", on or after 10/01/1997 ;

**2.** Solely with respect to "indoor environmental conditions" at a "covered location", on or after  ;

**3.** Solely with respect to "pollution conditions" resulting from "transportation", on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy.

**B.** FIRST-PARTY EMERGENCY RESPONSE COVERAGE (Coverage **B.**)

"First-party claims" arising out of: **1)** a "pollution condition" on, at, under or migrating from a "covered location"; **2)** an "indoor environmental condition" at a "covered location"; **3)** a "pollution condition" or "indoor environmental condition" resulting from "covered operations"; or **4)** a "pollution condition" resulting from "transportation", provided the "insured" first discovers such "pollution condition" or "indoor environmental condition" during the "policy period".  Any such "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period".

The coverage afforded pursuant to this Coverage **B.** only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, during the "policy period", or, if prior to the "policy period", then:

**1.** Solely with respect to "pollution conditions" on, at, under or migrating from a "covered location", on or after 10/01/1997 ;

2. Solely with respect to "indoor environmental conditions" at a "covered location", on or after 10/01/1997 ;

3. Solely with respect to "pollution conditions" or "indoor environmental conditions" resulting from "covered operations", on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy; or

4. Solely with respect to "pollution conditions" resulting from "transportation", on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy.

**C.** THIRD-PARTY CLAIMS COVERAGE (Coverage **C.**)

"Claims" arising out of: **1)** a "pollution condition" on, at, under or migrating from a "covered location"; **2)** an "indoor environmental condition" at a "covered location"; **3)** a "pollution condition" or "indoor environmental condition" resulting from "covered operations"; **4)** a "pollution condition" resulting from "transportation"; or **5)** a "pollution condition" on, at, under or migrating from a "non-owned disposal site", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage **C.**, generally, only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, during the "policy period", or, if prior to the "policy period", then:

1. Solely with respect to "pollution conditions" on, at, under or migrating from a "covered location", on or after 10/01/1997 ;

2. Solely with respect to "indoor environmental conditions" at a "covered location", on or after 10/01/1997 ;

3. Solely with respect to "pollution conditions" or "indoor environmental conditions" resulting from "covered operations", on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy; or

4. Solely with respect to "pollution conditions" resulting from "transportation", on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy.

The coverage afforded pursuant to this Coverage **C.** for "non-owned disposal sites", specifically, only applies to "pollution conditions" that are attributable to a "named insured's" waste generated at a "covered location" and received at the "non-owned disposal site", in its entirety, on or after the corresponding Exposure-Specific Retroactive Date identified in Item **5.** of the Declarations to this Policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

# LOCATION-SPECIFIC RETROACTIVE DATES ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Aqua America, Inc. | | | 12 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Solely with respect to "pollution conditions" on, at, under or migrating from, or "indoor environmental conditions at, "covered locations" specifically identified on the Schedule of Covered Locations, below, and notwithstanding any other more general Retroactive Date identified in the Declarations or by endorsement to this Policy, coverage afforded for such "covered locations" pursuant to this Policy shall be limited to "pollution conditions" or "indoor environmental conditions that first commence, in their entirety, on or after the corresponding Retroactive Date indicated with each covered location, below.

### Schedule of Covered Locations

| | *Covered Location* | *Retroactive Date* |
|---|---|---|
| **1.** | All locations on the 2013-2013 | 10/01/2013 |
| **2.** | All locations on 2016 SOV and not on 2013 SOV policy | 10/01/2016 |
| **3.** | All locations on 2018 SOV and not on 2016 SOV | Date of Acquisition |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# OFF-SITE OPERATIONS EXCLUSIONARY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 13 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **V., DEFINITIONS,** Subsection **L.**, of this Policy is hereby deleted in its entirety and replaced with the following:

    **L.** **"Off-Site Operations"** means any operations performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

**II.** Section **VI.**, **EXCLUSIONS**, Subsection **O., Prior Covered Operations**, of this Policy is hereby deleted in its entirety and replaced by the following:

    **O.** **Off-Site Operations**

    "Loss" arising out of or related to "pollution conditions" resulting from "off-site operations".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative



## OTHER INSURANCE AMENDATORY (PRIMARY - NON-CONTRIBUTORY)
## ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>14 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **IX., GENERAL CONDITIONS**, Subsection **H., Other Insurance**, of this Policy is hereby deleted in its entirety and replaced with the following:

**H.  Other Insurance**

If other valid and collectible insurance is available to an "insured" covering any exposure that is also covered pursuant to this Policy, this Policy shall apply as primary to, and not contributory with respect to, any such other insurance.

**II.  ☐  Insured-Specific Endorsement Application**

Solely to the extent that there is an **X** indicated in this Section **II.**, above, the "insured" and the Insurer hereby agree to the modifications identified in Section **I.** of this Endorsement only apply to coverage afforded pursuant to this Policy for the "insureds" specifically described in the Schedule of Primary/Non-Contributory Insureds, below:

### Schedule of Primary/Non-Contributory Insureds

**1.  N/A**

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative



# PRODUCTS POLLUTION COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Aqua America, Inc. | | | 15 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Per Product Condition Sublimit of Liability: $5,000,000**

**Aggregate Product Conditions Sublimit of Liability: $20,000,000**

**Product Pollution-Specific Retroactive Date: 10/01/2013**

The "insured" and the Insurer agree to the following changes to this Policy:

**I.** Section **I., INSURING AGREEMENTS**, of this Policy is hereby amended by addition of the following additional coverage part:

SUPPLEMENTAL COVERAGE – PRODUCTS POLLUTION

"Claims" arising out of "product pollution", provided that the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Supplemental Coverage only applies to "product pollution" that first commences, in its entirety, on or after the Retroactive Date identified on the Products Pollution Coverage Endorsement and prior to the expiration of the "policy period".

**II.** <u>Sublimits of Liability</u>

The amount that the Insurer shall pay pursuant to this Policy for "product pollution" is subject to the Per Product Condition Sublimit of Liability and Aggregate Product Conditions Sublimit of Liability identified above. Therefore, the Per Product Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" to which this insurance applies. Moreover, the Aggregate Product Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all "pollution conditions" to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**III.** <u>Solely with respect to coverage afforded pursuant to the Supplemental Coverage added to this Policy pursuant to this Endorsement</u>, Section **V.**, **DEFINTIONS**, Subsections **DD.** and **LL.**, of this Policy are hereby deleted in their entirety and replaced with the following:

**DD. "Loss"** means:

    **7.** A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated punitive, exemplary or multiplied damages, and civil fines, penalties and assessments, but solely to the extent that the punitive, exemplary or multiplied damages, and civil fines, penalties and assessments:

        **3.** Are insurable under applicable law; and

    **4.** Arise out of a "pollution condition" or "indoor environmental condition" that results in "bodily injury" or "property damage", or "first-party remediation costs" to which this insurance otherwise applies; and

    **8.** "Legal defense expense".

**LL. "Pollution condition"** means:

    **3.** The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, waste materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, or water; or

    **4.** The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure, provided that such *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

**IV.** Section **V.**, **DEFINTIONS**, of this Policy is hereby amended by addition of the following:

    **"Product Pollution"** means a "pollution condition" resulting from the use of potable, reclaimed or recycled water that has been sold or distributed by a "named insured" (hereinafter Product), provided that the use occurs after the "named insured" has relinquished possession of such Product.

**V.** Section **VI.**, **EXLCUSIONS**, of this Policy is hereby amended by addition of the following:

    **Products Liability**

    "Loss" arising out of any goods or products manufactured, sold or distributed by an "insured".

    This exclusion shall not apply to coverage afforded for "product pollution" pursuant to the Products Pollution Coverage Endorsement attached to this Policy.


All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative



## DEFINITION OF RESPONSIBLE PERSON AMENDATORY ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>16 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V., DEFINITIONS**, Subsection **PP.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**PP. "Responsible person"** means the General Counsel, the Director of Environmental Affairs (or any functional equivalent to such positions) or any other higher ranking official with responsibility for risk management and safety, of a "named insured", or any officer or director of, or partner in, a "named insured".

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative



## NAMED INSURED VERSUS NAMED INSURED AMENDATORY ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>17 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018 to 10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI., EXCLUSIONS,** Subsection **I., Insured vs. Insured**, of this Policy is hereby deleted in its entirety and replaced with the following:

**I.      Insured vs. Insured**

"Claims" made by any "named insured" against any other person or entity that is a "named insured" pursuant to this Policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative



## DEFINITION OF REMEDIATION COSTS AMENDATORY (LEAD-CONTAINING RESPONSE OR UPGRADES) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 18 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **V., DEFINITIONS**, Subsection **NN.**, of this Policy is hereby amended by addition of the following:

   **"Remediation costs"** does not mean any expenses to maintain, upgrade or improve any lead-containing pipes, equipment or systems.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative



# HYDRAULIC FRACTURING EXCLUSIONARY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 19 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **V., DEFINITIONS**, of this Policy is hereby modified by addition of the following:

"**Hydraulic fracturing**" means any operations associated with underground well stimulation by injection of fluids and other materials into the subsurface for the purposes of extraction of oil or natural gas, including any waste fluids or other materials generated therefrom.

**II.** Section **VI., EXCLUSIONS**, of this Policy is hereby amended by addition of the following:

**Hydraulic fracturing**

"Loss" arising out of or related to "hydraulic fracturing", including, but not limited to, any operation, transportation, processing, treatment, closure or post-closure associated therewith.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 20 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

The CANCELLATION Condition is replaced by the following:

**CANCELLATION**

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or giving notice of cancellation.

**B. CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**C. CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**2.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**3.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**4.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting inforce policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**5.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**6.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**D.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**E.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**F.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**G.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

The following supersedes any provisions to the contrary:

**A. NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**B. INCREASE PR PREMIUM**

If we increase your renewal premium, we will mail or deliver to the first Named Insured:

**1.** Written notice of our intent to increase the premium at least 60 days before the effective date of the premium increase; and

**2.** An estimate of the increase at least 30 days before the effective date of premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

JOHN J. LUPICA, President
Authorized Agent

# TERRORISM RISK INSURANCE ACT ENDORSEMENT

| Named Insured<br>Aqua America, Inc. | | | Endorsement Number<br>21 |
|---|---|---|---|
| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018  to  10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Terrorism Premium (Certified Acts of Terrorism): **$ 20,997**

In consideration of the additional premium indicated above, which is included in the Premium as listed on the Declarations, the "insured" and the Insurer, hereby agree to the following Policy change(s):

**A.** With respect to any "hostile acts" or "terrorism" exclusions contained in this Policy, or attached to this Policy by endorsement, such exclusions do not apply to a "certified act of terrorism", as defined in Paragraph **C.**, below.

**B.** With respect to any one or more "certified acts of terrorism", the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act **("TRIA")**, due to the application of any clause which results in a cap on the Insurer's liability for payments for terrorism losses.

**C.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to TRIA. The criteria contained TRIA for a "certified act of terrorism" include the following:

    **1.** The act resulted in insured losses in excess of $5 million attributable to all types of insurance subject to TRIA; and

    **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.** Notwithstanding any coverage that may otherwise be afforded for punitive damages under this Policy, if any, coverage shall not be afforded for damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**E.** The coverage afforded under this endorsement shall expire at the earlier of the following dates:

    **1.** The end of the "policy period", as indicated on the Declarations; or

    **2.** <u>**December 31, 2020**</u>.

**F**. The premium for "certified acts of terrorism" coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in TRIA. The federal program established by TRIA is scheduled to terminate at the end of December 31, 2020, unless extended by the federal government.

**G**. If this "policy period" extends beyond December 31, 2020, please note that the TRIA premium, above, is premised on the parties' assumption that TRIA will later be extended through the end of the "policy period", thereby mandating that Insurer make available coverage for "certified acts of terrorism" for the entire "policy period". In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period", the Insurer will refund the unearned portion of our TRIA premium to the insured on a pro-rata basis. In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify terrorism coverage to conform with the statutory requirements and risks presented by any such new legislation.

All other terms and conditions of the policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 22 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018 to 10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $ 20,997.

JOHN  J.  LUPICA,  President
Authorized Representative

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Aqua America, Inc. | 23 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPI | G71190511 001 | 10/01/2018  to  10/01/2021 | 10/01/2018 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

# SIGNATURES

| Named Insured<br>Aqua America, Inc. | Endorsement Number<br>24 |
|---|---|

| Policy Symbol<br>PPI | Policy Number<br>G71190511 001 | Policy Period<br>10/01/2018  to  10/01/2021 | Effective Date of Endorsement<br>10/01/2018 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President
Authorized Representative

Chubb. Insured.™

CC-1K11h  (03/14)

Page 1 of 1



# Disclaimer Notice
## Commercial Lines Deregulation

**This policy may use Rates, Rules, and/or Contract Provisions and Forms that are exempt from the filing and approval requirements of the Department of Insurance of the Commonwealth of Pennsylvania.**

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

© ISO Properties, Inc.,  2001



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004