# EXHIBIT 6





**SP 5 369 0514**

Insurance Products underwritten by Westport Insurance Corporation, First Specialty Insurance Corporation, North American Capacity Insurance Company, North American Specialty Insurance Company, North American Elite Insurance Company, Washington International Insurance Company, or Swiss Re International S.E.

Swiss Re Corporate Solutions offers innovative, high-quality insurance capacity for single and multi-line programmes worldwide, either on a standalone basis or as part of structured and tailor-made solutions. In addition, it provides customised risk transfer solutions to mid-sized and large, multinational corporations across the globe to assist in mitigating their risk exposure. Swiss Re Corporate Solutions serves more than 50 000 customers across nearly 40 offices worldwide and is backed by the financial strength of the Swiss Re Group. For more information about Swiss Re Corporate Solutions, please visit: www.swissre.com/corporatesolutions

©2014 Swiss Re. All rights reserved.

# *North American Elite Insurance Company*

### LOSS REPORTING PROCEDURES

Welcome to North American Elite Insurance Company, a member company of Swiss Re Corporate Solutions. We would like to take this opportunity to share our loss-reporting procedures. In the event of a loss or potential loss, please immediately complete and forward a First Notice of Loss on an ACORD Loss Form. If you do not use the ACORD Loss Form please otherwise provide the following information:

- Your Name and Contact Information (including e-mail address)
- Name of Insured/Policy Holder and/or Policy Number
- Contact Details of Insured Representative and Preferred Method of Contact
- Date of Loss
- Location of Loss
- Brief Summary of the Loss
- Contact Name(s) and e-Mail Address(es) for New Loss Acknowledgement Letter

Forward the New Loss Details by one of the following methods:

By e-mail:     ClaimsNACasualty_CorporateSolutions@swissre.com

By Fax:       Send to the attention of "Corporate Solutions Claims" at (260) 435-8743

By Mail:      North American Elite Insurance Company
              Attention: Corporate Solutions Claims
              5200 Metcalf Avenue
              Overland Park, Kansas 66202

Please visit us on our website: www.swissre.com/corporatesolutions

This notice is for information only and does not become a part or condition of the policy.

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

**1.** Surveys;

**2.** Consultation or advice; or

**3.** Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

**1.** If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

**2.** To consultation services required to be performed under a written service contract not related to a policy of insurance; or

**3.** If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

# *North American Elite Insurance Company*

5200 Metcalf Avenue
Overland Park, KS 66202
(913) 676-5200
A Stock Insurance Company

Producer's Name and Address

R-T SPECIALTY, LLC
1515 MARKET STREET, SUITE 1110
PHILADELPHIA, PA 19102

Policy Number:

UMB 2000667 01

 Renewal of Number:

UMB200066700

## COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY
## DECLARATIONS

**Forms used and rates charged are exempt from filing and approval requirements.**

**Item 1    Named Insured and Mailing Address:**

AQUA AMERICA INC.
762 W. LANCASTER AVENUE
BRYN MAWR, PA 19010-3489

**Item 2    Insurer:**

North American Elite Insurance Company
5200 Metcalf Avenue
Overland Park, KS 66202

**Item 3    Policy Period:**
**Inception Date\*:**  October 1, 2018
**Expiration Date\*:**  October 1, 2019

*12:01 A.M. Standard Time at the mailing address of the **Named Insured** shown in Item 1 above.

**Item 4       Limits of Insurance:**
**Subject to the terms of this policy, the Limits of Insurance are as shown below:**

A. USD  10,000,000          **Each Occurrence**
B. USD  10,000,000          **General Aggregate**  (as provided by Section IV of this Policy)
C. USD  10,000,000          **Products-Completed Operations Aggregate**
(as provided by Section IV of this Policy)

Defense is in addition to the limits above.

**Item 5       Scheduled Underlying
Insurance:**                           See Schedule of Underlying Insurance (attached hereto)

**Item 6       Self-Insured Retention:**        USD   25,000

**Item 7       Premium:**                       USD   550,000
**The Premium is a flat premium and not subject to audit or adjustment except as specifically provided herein.**

**Item 8       Endorsements:**                  This Policy includes these Endorsements at Inception Date:
See attached Schedule of Endorsements

Issued Date:  October 15, 2018

[All currency is denominated in United States Dollars (USD)]

**In Witness Whereof**, *the issuing Company has caused this policy to be signed officially below.*

_____
President

_____
Secretary

_____
*North American Elite Insurance Company*

# *North American Elite Insurance Company*

### COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have the special meanings provided in Section **VII.** Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

**I.    INSURING AGREEMENT**

    A.    We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages by reason of liability imposed by law because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies or because of "bodily injury" or "property damage" to which this insurance applies assumed by the "insured" under an "insured contract."

        The amount we will pay for damages is limited as described in Section **IV.** Limits of Insurance.

    B.    This insurance applies to "bodily injury," "property damage" or "personal and advertising injury," but only if:

        1.    the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory," and the "bodily injury" or "property damage" occurs during the "policy period"; and

        2.    the "personal and advertising injury" is caused by an "occurrence" that takes place in the "coverage territory" arising out of your business, but only if the "occurrence" was committed during the "policy period."

    C.    This insurance applies to "bodily injury" or "property damage" only if, prior to the "policy period," no "insured" listed in Section **II.** A. below and no "employee" authorized by you to give or receive notice of an "occurrence," claim, or "suit" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any such "insured" or any authorized "employee" knew, prior to the "policy period," that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period."

    D.    "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period," known to have occurred by any "insured" listed in Section **II.** A. below or any "employee" authorized by you to give or receive notice of an "occurrence," claim, or "suit" includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period."

    E.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed in Section **II.** A. below or any "employee" authorized by you to give or receive notice of an "occurrence," claim, or "suit":

        1.    reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        2.    receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        3.    becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

F.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

G.  If we are prevented by law or statute from paying damages covered by this policy on behalf of the "insured," then we will indemnify the "insured" for those sums in excess of the "retained limit."

## II.  INSUREDS

A.  The following are "insureds":

1.  The Named Insured named in **Item 1** of the Declarations of this policy is an "insured."

2.  Any subsidiary of the Named Insured named in Item 1 of the Declarations of this policy, and any other organization under your control and active management at the inception date of this policy is an "insured," provided that such subsidiary or organization is an "insured" in the "scheduled underlying insurance."

3.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are "insureds," but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an "insured."  Your members, your partners, and their spouses are also "insureds," but only with respect to the conduct of your business.

c.  A limited liability company, you are an "insured." Your members are also "insureds," but only with respect to the conduct of your business. Your managers are "insureds," but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an "insured." Your "executive officers" and directors are "insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "insureds," but only with respect to their liability as stockholders.

e.  A trust, you are an "insured." Your trustees are also "insureds," but only with respect to their duties as trustees.

B.  Each of the following is also an "insured":

1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

a.  "Bodily injury" or "personal and advertising injury":

(1)  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2)  to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph a.(1) above;

(3)  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs a. (1) or (2) above; or

(4)  arising out of his or her providing or failing to provide professional health care services.

b.  "Property damage" to property:

       (1)   owned, occupied or used by you,

       (2)   rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

2.    Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

3.    Any person or organization having proper temporary custody of your property if you die, but only:

    a.   with respect to liability arising out of the maintenance or use of that property; and

    b.   until your legal representative has been appointed.

4.    Your legal representative if you die, but only with respect to duties as such. Your legal representative will have all your rights and duties under this policy.

5.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, over which you maintain ownership or majority interest, will qualify as an "insured" if it also qualifies as an insured in "scheduled underlying insurance" and there is no other similar insurance available to that organization. However:

    a.   coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period," whichever is earlier;

    b.   this insurance does not apply to "bodily injury" or "property damage" that occurred or began to occur before you acquired or formed the organization;

    c.   this insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d.   we reserve the right to charge an additional premium if such organization qualifies as an "insured."

6.    Any person or organization not a Named Insured under this policy but covered as an additional insured under the "scheduled underlying insurance," but coverage hereunder for such person or organization shall not be broader than that afforded by such "scheduled underlying insurance."

7.    Solely as respects automobile liability, any person or organization insured under "scheduled underlying insurance," but coverage hereunder for such person or organization shall not be broader than that afforded by such "scheduled underlying insurance."

C.    Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## III.   DUTY TO DEFEND, DEFENSE EXPENSE AND SUPPLEMENTARY PAYMENTS

A.    We will have the right and duty to defend the "insured" against any "suit" claiming damages for "bodily injury," "property damage" or "personal and advertising injury," even if meritless, false or fraudulent, to which this insurance applies when:

1.    the applicable limits of "scheduled underlying insurance" have been exhausted by payment of "loss" to which this policy applies and the total applicable limits of "other insurance" have been exhausted; or

2.    damages claimed for "bodily injury," "property damage" or "personal and advertising injury" are

    a.   not covered by "scheduled underlying insurance" or any "other insurance," and

    b.   the applicable Self-Insured Retention has been exhausted by payment of "loss" covered by this policy.

If we are prevented by law from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.   We will have no duty to defend the "insured" against any "suit" claiming damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

C.   Except as provided in Paragraph A. above, we will have no duty to defend any "suit" against the "insured."  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

D.   If we assume the defense of any "suit" against the "insured," we will:

1.   investigate, negotiate and settle the "suit" as we deem expedient; and

2.   pay the following supplementary payments to the extent that such payments are not covered by "scheduled underlying insurance" or any applicable "other insurance":

a.   Premiums on bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to apply for or furnish these bonds.

b.   Premiums on appeal bonds required by law to appeal any "suit" we defend but only for bond amounts within the applicable Limit of Insurance. We are not obligated to apply for or furnish any such bond.

c.   The "insured's" expenses incurred at our request or with our consent.

d.   All costs taxed against the "insured" in the "suit."

e.   Pre-judgment interest awarded against the "insured" on that part of the judgment, within the applicable Limit of Insurance, that we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest accruing after the offer.

f.   Post judgment interest on that part of any judgment that we become obligated to pay, which accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that we have become obligated to pay, which is within the applicable Limit of Insurance.

E.   We will not defend any "suit," or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph D. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of "loss" and we will have the right to withdraw from the further defense of such "suit" by tendering control of said defense to the "insured."

## IV.   LIMITS OF INSURANCE

A.   The Limits of Insurance shown in the Declarations and the provisions below state the most we will pay for all damages regardless of the number of:

1.   "insureds";

2.   claims made or "suits" brought; or

3.   persons or organizations making claims or bringing "suits"; or

4.   coverages provided under this policy.

B.   The General Aggregate Limit stated in the Declarations is the most we will pay for all damages, except:

1.   damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

2.   damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a covered "auto."

C.    The Products-Completed Operations Aggregate Limit stated in the Declarations is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

D.    Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in the Declarations is the most we will pay for the sum of all damages because of "bodily injury," "property damage," and "personal and advertising injury" arising out of any one "occurrence."

E.    If the applicable limits of "scheduled underlying insurance" have been:

    1.    Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced limit of "scheduled underlying insurance" or "other insurance."

    2.    Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as underlying insurance.

F.    This policy applies only in excess of the "retained limit." If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance

    1.    greater than the amount shown in such schedule, then this policy will apply in excess of the greater amount of valid and collectible insurance; or

    2.    less than the amount shown in such schedule, then this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.    Expenses incurred to defend any "suit" or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy.  However, if such expenses reduce the applicable limits of "scheduled underlying insurance," then such expenses will reduce the applicable Limits of Insurance of this policy.

H.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

I.    We will not make any payment under this policy unless and until:

    1.    the total applicable limits of "scheduled underlying insurance" have been exhausted by the payment of "loss" to which this policy applies and any applicable "other insurance" have been exhausted by the payment of "loss"; or

    2.    the total amount shown in the Declarations as the applicable Self-Insured Retention has been satisfied by the payment of "loss" to which this policy applies.

J.    When the amount of "loss" has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the "insured" the amount of such "loss" falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by the "insured" and the claimant or the claimant's legal representative.

## V.    EXCLUSIONS

### A.    Aircraft

This policy excludes from coverage "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented or loaned to any "insured." Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured," if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any "insured."

B.   **Asbestos**

This policy excludes from coverage any actual or alleged liability whatsoever for any claim or claims in respect of "loss" or "losses" directly or indirectly arising out of, resulting from or in consequence of, or in any way involving asbestos, or any materials containing asbestos in whatever form or quantity.

C.   **Contractual Liability**

This policy excludes from coverage any liability for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.   that the "insured" would have in the absence of the contract or agreement; or

2.   assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs or, if applicable, the offense giving rise to the "personal and advertising injury" takes place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be damages because of "bodily injury" or "property damage" or "personal and advertising injury," provided that:

   a.   liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b.   such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

D.   **Damage to Impaired Property or Property Not Physically Injured**

This policy excludes from coverage "property damage" to "impaired property" or property that has not been physically injured, arising out of:

1.   a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

E.   **Damage to Property**

This policy excludes from coverage "property damage" to:

1.   property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.   premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3.   property loaned to you;

4.   personal property in the care, custody or control of the "insured";

5.   that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6.   that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement. Paragraph 6. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

F.    **Damage to Your Product**

This policy excludes from coverage "property damage" to "your product" arising out of it or any part of it.

G.    **Damage to Your Work**

This policy excludes from coverage "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.    **Electronic Data; Electronic Chat Rooms or Bulletin Boards**

This policy excludes from coverage "personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

I.    **Employer's Liability**

This policy excludes from coverage "bodily injury" to:

1.    an "employee" of the "insured" arising out of and in the course of:

   a.    employment by the "insured"; or

   b.    performing duties related to the conduct of the "insured's" business; or

2.    the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1 above.

This exclusion applies:

1.    whether or not the "insured" is liable in its capacity as employer or in any other capacity; and

2.    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply:

1.    To liability assumed by the "insured" under an "insured contract."

2.    To the extent that such coverage is provided by "scheduled underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "scheduled underlying insurance" by the payment of "loss" covered by this policy. However, the coverage provided by this policy shall be no broader than coverage provided by such "scheduled underlying insurance."

J.    **Employment Practices**

This policy excludes from coverage any liability arising out of:

1.    failure to hire any prospective "employee" or any applicant for employment;

2.    dismissal, discharge or termination of any "employee";

3.    failure to promote or advance any "employee";

4. employment-related practices, policies, acts, omissions or misrepresentations directed at a past, prospective, present or future "employee," including, but not limited to:

    a. coercion, harassment, humiliation or discrimination;

    b. demotion, evaluation, reassignment, discipline, or retaliation;

    c. libel, slander, humiliation, defamation, or invasion of privacy; or

    d. violation of civil rights; and

5. any acts or omissions for which liability for consequential damages, "loss," cost or expense as a result of 1., 2., 3. or 4. above actually or allegedly arises.

This exclusion applies:

1. whether or not the "insured" is liable in its capacity as employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**K. Expected or Intended Injury**

This policy excludes from coverage "bodily injury" or "property damage" expected or intended from the standpoint of the "insured." This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**L. Infringement of Copyright, Patent, Trademark or Trade Secret**

This policy excludes from coverage "personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**M. "Insureds" in Media and Internet-Type Businesses**

This policy excludes from coverage "personal and advertising injury" committed by an "insured" whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Section **VII. Definitions**, R. "personal and advertising injury," paragraphs 1., 2. and 3.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**N. Liquor Liability**

This policy excludes from coverage "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion does not apply to the extent that such coverage is provided by "scheduled underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "scheduled underlying insurance" by the payment of "loss" covered by this policy. However, the coverage provided by this policy shall be no broader than coverage provided by such "scheduled underlying insurance."

O.    **Nuclear**

This policy excludes from coverage:

1.    any injury or damage:

    a.    with respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of insurance; or

    b.    resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.    any injury or damage resulting form the "hazardous properties" of "nuclear material," if

    a.    The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

    b.    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    c.    The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any "nuclear facility."

As used in this exclusion:

    a.    "Hazardous properties" include radioactive, toxic or explosive properties;

    b.    "Nuclear material" means "source material," "special nuclear material" or "by-product material";

    c.    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof;

    d.    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    e.    "Waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

    f.    "Nuclear facility" means:

        (1)    Any "nuclear reactor";

        (2)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. Injury or damage includes all forms of radioactive contamination of property.

P. **Pollution**

This policy excludes from coverage:

1. "bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured";

b. at or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

c. which are or were at anytime transported, handled, stored, treated, disposed of, or processed as waste by or for:

(1) any "insured"; or

(2) any person or organization for whom you may be legally responsible;

d. at or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured," contractor or subcontractor;

e. at or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

f. that are, or that are contained in any property that is:

(1) being transported or towed by, handled, or handled for movement into, onto or from, a covered "auto";

(2) otherwise in the course of transit by or on behalf of the "insured"; or

(3) being stored, disposed of, treated or processed in or upon a covered "auto";

g. before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

h. after the "pollutants" or any property in which the "pollutants" are contained are moved from a covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

However, the following exceptions to this exclusion apply to the extent that such coverage is provided by "scheduled underlying insurance" or would have been provided but for the exhaustion of the applicable limits of such "scheduled underlying insurance" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by such "scheduled underlying insurance":

1. Paragraph 1. a. of this exclusion does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat, cool or dehumidify that building.

2. Paragraph 1. a. of this exclusion does not apply to "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured," other than that additional insured.

3. Paragraph 1. d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured," contractor or subcontractor.

4. Paragraph 1. d. of this exclusion does not apply to "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. Paragraph 1. d. of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

6. Paragraph 1. f. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered "auto" or its parts, if:

    a. the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    b. the "bodily injury," "property damage" or any covered pollution cost or expense does not arise out of the operation of any equipment listed in Paragraphs 6. b. and 6. c. of the definition of "mobile equipment".

7. Paragraphs 1. g. and 1. h. of this exclusion do not apply to "occurrences" that take place away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    a. the "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    b. the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2.   any "loss," cost or expense arising out of any:

    a.   request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    b.   claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this Paragraph 2. does not apply to liability for damages because of "property damage" that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**Q.   Recall of Products, Work or Impaired Property**

This policy excludes from coverage "bodily injury," "property damage" or "personal and advertising injury" or any other "loss," cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   "your product";

2.   "your work"; or

3.   "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**R.   Trade or Economic Sanctions**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

**S.   Unauthorized Use of Another's Name or Product**

This policy excludes from coverage "personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or meta-tag, or any other similar tactics to mislead another's potential customers.

**T.   Various Laws**

This policy excludes from coverage any "loss," demand, claim, or "suit" under:

1.   The Employee Retirement Income Security Act of 1974 including any amendment thereto or any similar law.

2.   Any workers' compensation, disability benefits or unemployment compensation laws or any similar laws.

3.   Any "auto" no-fault law, any uninsured or underinsured motorist law, any personal injury protection law or similar law.

**U.   Various Personal Injury and Advertising Injury**

This policy excludes from coverage:

1.   "personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

2.   "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3.      "personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period."

4.      "personal and advertising injury" arising out of a criminal act committed by or at the direction of the "insured."

5.      "personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

6.      "personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

7.      "personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

V.      **Violation of Communication or Information Law**

This policy excludes from coverage any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

W.      **War**

This policy excludes from coverage "bodily injury," "property damage" or "personal and advertising injury," however caused, arising, directly or indirectly, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

X.      **Watercraft**

This policy excludes from coverage "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned to any "insured." Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured," if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any watercraft that is owned or operated by or rented or loaned to any "insured."

This exclusion does not apply to the extent that such coverage is provided by "scheduled underlying insurance" or would have been provided but for the exhaustion of the applicable limits of such "scheduled underlying insurance" by the payment of "loss" covered by this policy. However, the coverage provided by this policy shall be no broader than coverage provided by such "scheduled underlying insurance."

VI.    **CONDITIONS**

A.      **Appeals**

If the "insured" or the "insured's" underlying insurers do not appeal a judgment in excess of the total applicable limits of "scheduled underlying insurance," we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B.      **Audit and Inspection**

We may audit and examine your books and records as they relate to this policy at any time.

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your "employees" or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

C.   **Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will neither relieve us of nor increase our obligations under this policy. In the event of bankruptcy, insolvency, refusal or inability to pay of any underlying insurer, the insurance afforded by this policy will not drop down or replace "scheduled underlying insurance," but will apply as if the limits of such "scheduled underlying insurance" are fully available and collectible and we will not assume any obligation under "scheduled underlying insurance."

D.   **Cancellation**

1.   You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2.   We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice.

3.   The "policy period" will end on the day and hour stated in the cancellation notice.

4.   If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Policy Premium as shown in the Declarations.

5.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Policy Premium as shown in the Declarations.

6.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.   The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

E.   **Changes; Assignment of Your Rights and Duties**

This policy may be changed or amended only by a written endorsement signed and issued by us.

Your rights and duties under this policy are non-transferable and may not be assigned or transferred to any third party except by an endorsement to this policy issued by us.

F.   **Duties in the Event of an Occurrence, Claim or Suit**

1.   You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim for damages under this policy. To the extent possible, notice should include:

   a.   how, when and where the "occurrence" took place;

   b.   the names and addresses of any injured persons and witnesses; and

   c.   the nature and location of any injury or damage arising out of the "occurrence."

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

    a. immediately record the specifics of the claim or "suit" and the date received; and

    b. notify us in writing as soon as practicable.

3. You and any other involved "insured" must:

    a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    b. authorize us to obtain records and other information;

    c. cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4. No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our written consent.

**G.    Legal Action Against Us**

1. No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured."

2. You will have no right of action against us under this policy unless all of its terms have been fully complied with; and the amount that you seek to recover has been determined by settlement with our consent or by final judgment against an "insured."

**H.    Maintenance of Underlying Insurance**

During the "policy period," you agree:

1. To keep "scheduled underlying insurance" and renewals or replacements thereof in full force and effect.

2. That the limits of "scheduled underlying insurance" will be maintained except for any reduction or exhaustion of such limits by the payment of "loss" that would be covered by this policy.

3. That the terms and conditions of "scheduled underlying insurance" will not materially change during the "policy period."

4. That any renewal or replacement of "scheduled underlying insurance" will not be more restrictive in coverage.

5. That "scheduled underlying insurance" may not be canceled or non-renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any "scheduled underlying insurance."

Failure to maintain the "scheduled underlying insurance" as provided by this condition will not invalidate this policy. This policy will apply as if the "scheduled underlying insurance" were maintained as required by this policy.

**I.    Other Insurance**

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance." This provision will not apply if the "other insurance" is written to be excess of this policy.

**J.    Premium**

The first Named Insured shown in the Declarations will be responsible for payment of all premiums when due.

The premium stated in the Declarations is a flat premium. It is not subject to adjustment except as provided herein or as changed by an endorsement to this policy issued by us.

K.   **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1.   as if each Named Insured were the only Named Insured; and

2.   separately to each "insured" against whom claim is made or "suit" is brought.

M.   **Titles**

The titles to the various parts, sections, subsections and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections and endorsements.

N.   **Transfer of Rights of Recovery Against Others to Us**

1.   If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after "loss" to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2.   Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3.   If you and the insurer of "scheduled underlying insurance" waive any right of recovery against a specific person or organization for damages as required under an "insured contract," we will also waive any such rights we may have against such person or organization provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the "insured contract."

O.   **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

P.   **When Loss is Payable**

Coverage under this policy will not apply until the "insured," or the "insured's" underlying insurer, has paid or is obligated to pay the full amount of the "retained limit."

When amount of damages is determined by an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, we will promptly pay on behalf of the "insured" the amount of damages covered under the terms of this policy.

**VII.   DEFINITIONS**

A.   "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement."

B.   "Auto" means

1.   a land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment; or

    2.    any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

C.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or mental injury resulting from "bodily injury."

D.    "Coverage territory" means anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to the payment of claims.

E.    "Employee" means an individual working for you in return for remuneration. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker" or independent contractor.

F.    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

G.    "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

H.    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    1.    it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.    you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1.    the repair, replacement, adjustment or removal of "your product" or "your work"; or

    2.    your fulfilling the terms of the contract or agreement.

I.    "Insured" means a person or organization coming within the description set forth in Section **II.** of this policy.

J.    "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

    1.    that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel underpass or crossing;

    2.    that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        a.    preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        b.    giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    3.    under which the "insured," if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

K.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

L.  "Loading or unloading" means the handling of property:

1.  after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2.  while it is in or on an aircraft, watercraft or "auto"; or

3.  while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

M.  "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury," after making proper deduction for all recoveries and salvages, provided, however, that if expenses incurred to defend a "suit" or to investigate a claim reduce the applicable limits of "scheduled underlying insurance," then "loss" shall include such expenses.

N.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a.  equipment designed primarily for:

        (1)  snow removal;

        (2)  road maintenance, but not construction or resurfacing; or

        (3)  street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.   Land vehicles subject to a compulsory or financial responsibility law are considered "autos."

O.     "Occurrence" means:

1.     With respect to "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of the same "occurrence," regardless of the frequency or repetition thereof, or the number of claimants.

2.     With respect to "personal and advertising injury," a covered offense.  All damages that arise from the same act, publication or general conditions are considered to arise out of the same "occurrence," regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

P.     "Other insurance" means a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "scheduled underlying insurance," the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy and providing coverage that this policy also provides.

Q.     "Policy period" means the period of time from the inception date shown in the Declarations to the earlier of the expiration date shown in the Declarations or the effective termination date of this policy.

R.     "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

1.     false arrest, detention or imprisonment;

2.     malicious prosecution;

3.     the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.     oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.     oral or written publication, in any manner, of material that violates a person's right of privacy;

6.     the use of another's advertising idea in your "advertisement"; or

7.     infringing upon another's copyright, trade dress or slogan in your "advertisement'.

S.     "Pollutants" shall mean any solid, liquid, gaseous or thermal irritant, contaminant or toxic or hazardous substance which may, does or is alleged to affect adversely the environment, property, persons or animals, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, oil and petroleum and their derivatives, and waste. 'Waste' includes, without limitation, materials to be recycled, reconditioned, reclaimed, discarded or stored pending final disposal.

T.     "Products-completed operations hazard":

1.     includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

a.     products that are still in your physical possession; or

b.     work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(1)   When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. Does not include "bodily injury" or "property damage" arising out of:

a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured"; or

b. the existence of tools, uninstalled equipment or abandoned or unused materials.

U. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property..

V. "Retained limit" means either of the following:

1. The total applicable limits of "scheduled underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "scheduled underlying insurance" or "other insurance."

W. "Scheduled underlying insurance" means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

"Scheduled underlying insurance" does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

X. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

Y. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Z. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

AA.   "Your product":

    1.   Means:

        a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (1)   You;

            (2)   Others trading under your name; or

            (3)   A person or organization whose business or assets you have acquired; and

        b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    2.   Includes:

        a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        b.   The providing of or failure to provide warnings or instructions.

    3.   Does not include vending machines or other property rented to or located for the use of others but not sold.

AB.   "Your work":

    1.   Means:

        a.   Work or operations performed by you or on your behalf; and

        b.   Materials, parts or equipment furnished in connection with such work or operations.

    2.   Includes:

        a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

        b.   The providing of or failure to provide warnings or instructions.

# *North American Elite Insurance Company*

Policy Number:  UMB 2000667 01                    Effective Date of Endorsement:  10/01/2018

### SCHEDULE OF ENDORSEMENTS

| Form Number | Edition Date | Title |
|---|---|---|
| CU00161 | 0812 | Commercial Umbrella Liability Insurance Policy Declarations |
| SP 3 881 | 0307 | Signature Page |
| CU00001 | 0812 | Commercial Umbrella Liability Policy |
| CU00162 | 0812 | Schedule of Endorsements |
| CU00169 | 0812 | Schedule of Underlying Coverage |
| CU00168 | 0812 | Schedule of Retained Limits |
| CU00058PA | 0812 | Pennsylvania Changes - Cancellation and Nonrenewal |
| CU00075 | 0812 | Designated Coverage Retained Limit Amendatory Endorsement |
| CU00076 | 0812 | Employee Benefits Liability Limitation (Claims Made Version) |
| CU00078 | 0812 | Foreign Liability Limitation Endorsement |
| CU00081 | 0812 | Knowledge Of Occurrence Endorsement |
| CU00083 | 0812 | Notice Of Claim Endorsement |
| CU00085 | 0812 | Waiver Of Subrogation Endorsement |
| CU00104 | 0812 | Discrimination Liability Exclusion |
| CU00123 | 0116 | Silica Exclusion |
| CU00124 | 0812 | Specific Entity Exclusion |
| CU00139 | 0812 | Law Of Venue Most Favorable To Insurability of Punitive Damages |
| CU00145 | 0812 | Broadened Definition of Bodily Injury Endorsement |
| CU00178 | 0315 | Amendment of Cancellation Condition Endorsement |
| CU00180 | 0616 | Addl Insrd Primary&Non-Contributory-Automatic StatusWhen Reqd In Agreemnt By You |
| CU00182 | 0912 | Advice Of Cancellation To Entities Other Than Named Insured |
| CU00184 | 0912 | Broad Form Named Insured Endorsement |
| CU00191 | 0912 | Amendment To Definition Of  "Insured Contract" Endorsement |
| CU00196 | 0912 | Incidental Medical Malpractice Limitation Endorsement |
| CU00202 | 1112 | Business Crisis Management Cost Coverage Endorsement |
| CU00276 | 0315 | Liquor Liability Exclusion Endorsement |
| CU00289 | 0315 | Violation Of Communication Or Information Law Exclusion Endorsement |
| CU00293 | 1015 | Access, Collection and Discl of Info Excl - Lmtd BI & PD Coverage |
| CU00294 | 1015 | Electronic Chat Rooms Or Bulletin Boards And Electronic Data Exclusion |
| SP 5 629 | 0115 | Cap on Losses from Certified Acts of Terrorism |
| SP 6 069 | 0115 | Disclosure Pursuant to Terrorism Risk Insurance Act |

DR 10 911    0915    Exclusion - PCBs (Polychlorinated Biphenyls)

DR 14 896    1017    Pollution Exclusion - Named Peril Exception With Self-Insured Retention

# *North American Elite Insurance Company*

Policy Number:  UMB 2000667 01                          Effective Date:  10/01/2018

## SCHEDULE OF UNDERLYING COVERAGE

Coverage: Automobile Liability
Insurer/Carrier: ACE American Insurance Company
Policy Number: ISA H25274398
Policy Period: October 1, 2018 to October 1, 2019
Limits of Insurance:

USD 2,000,000 BI/PD CSL
USD 2,000,000 UM/UIM
USD 2,000,000 Hired
USD 2,000,000 Non Owned

Defense included in limits above.


Coverage: Employee Benefits Liability
Insurer/Carrier: ACE American Insurance Company
Policy Number: HDO G71212828
Policy Period: October 1, 2018 to October 1, 2019
Limits of Insurance/Aggregate:

USD 2,000,000 Each Wrongful Act
USD 2,000,000 Aggregate

(Claims Made) Retro Date 10/01/2015
Defense is in addition to the limits above.


Coverage: Employers' Liability
Insurer/Carrier: ACE American Insurance Company
Policy Number: WLR C65437636
Policy Period: October 1, 2018 to October 1, 2019
Limits of Insurance/Aggregate:

USD 1,000,000 BI by Accident Each Accident
USD 1,000,000 BI by Disease Policy Aggregate
USD 1,000,000 BI by Disease Each Employee

Defense is in addition to the limits above.


Coverage: General Liability
Insurer/Carrier: ACE American Insurance Company
Policy Number: HDO G71212828
Policy Period: October 1, 2018 to October 1, 2019
Limits of Insurance/Aggregate:

USD 2,000,000 Each Occurrence
USD 5,000,000 General Aggregate
USD 5,000,000 Products Completed Operations Aggregate
USD 2,000,000 Personal & Advertising Injury Limit

Defense is in addition to the limits above.


[All currency is denominated in United States Dollars (USD)]

CU00169 0812                                              Page  1 of 1

# *North American Elite Insurance Company*

Policy Number:  UMB 2000667 01                          Effective Date of Endorsement:   October 1, 2018

## SCHEDULE OF RETAINED LIMITS

| Coverage(s) | Retained Limit(s) |
|---|---|
| Automobile Liability - Foreign | USD 1,000,000 BI/PD CSL |
| | Defense is in addition to the limits above. |
| | |
| Employers' Liability - Foreign | USD 1,000,000 BI by Accident Each Accident |
| | USD 1,000,000 BI by Disease Policy Limit |
| | USD 1,000,000 BI by Disease Each Employee |
| | Defense is in addition to the limits above. |
| | |
| General Liability - Foreign | USD 1,000,000 Each Occurrence |
| | USD 2,000,000 General Aggregate |
| | USD 2,000,000 Products Completed Operations Aggregate |
| | USD 1,000,000 Personal & Advertising Injury Limit |
| | USD 4,000,000 Master/Term Aggregate |
| | USD 1,000,000 Damage to Premises Rented To You Limit |
| | USD 25,000 Medical Expense limit |
| | USD 4,000,000 Master Control Program Aggregate Limit |
| | Defense is in addition to the limits above. |

# *North American Elite Insurance Company*

Endorsement No.

**PENNSYLVANIA CHANGES –**

**CANCELLATION AND NONRENEWAL**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

The provisions of the Policy Form apply unless modified by this endorsement.

**A.  CANCELLATION**

1.  The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2.  Cancellation Of Policies In Effect For Less Than 60 Days

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3.  Cancellation Of Policies In Effect For 60 Days Or More

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a.  You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b.  You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c.  A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the "policy period." Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d.  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e.  Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   f.  Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5.  Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

6.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7.  If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

## B.  NONRENEWAL

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

## C.  INCREASE OF PREMIUM

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**DESIGNATED COVERAGE RETAINED LIMIT AMENDATORY ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Solely as respects coverages listed in the Schedule of Retained Limits (CU00168), the following shall apply:

The **DECLARATIONS, Item 6**, **Self-Insured Retention** is deleted in its entirety.

Section **IV. LIMITS OF INSURANCE**, Paragraphs E., G. and I. are deleted in their entireties and replaced by the following:

E.    If the applicable "retained limit(s)" listed in the Schedule of Retained Limit(s) has been:

1. Reduced by the payment of "loss" covered by this policy, then this policy will be excess of the reduced "retained limit(s)".

2. Exhausted by the payment of "loss" covered by this policy, then this policy will continue in force as underlying insurance.

G.    "Defense expenses" will be in addition to the applicable Limits of Insurance of this policy. However, if such expenses reduce the applicable "retained limit," then such expenses will reduce the applicable Limits of Insurance of this policy.

I.    We will not make any payment under this policy unless and until the total applicable "retained limit(s)" have been exhausted by payment of "loss" to which this policy applies and any applicable "other insurance" has been exhausted by payment of "loss."

Section **II. INSUREDS** A.2., A.3., B.5., B.6. and C. are deleted in their entirety and replaced with the following:

A.2.   Any subsidiary, limited liability company, division, joint venture or partnership, in respect of which the Named Insured stated in Item 1. of the Declarations of this policy at the inception date of this policy:

a.    has an ownership interest of fifty percent (50%) or greater;

b.    exercises management control; or

c.    has agreed in writing to assume the obligation to provide insurance of the type afforded by this policy for the entire subsidiary, limited liability company, division, joint venture or partnership,

is an "insured."

A.3.   If you are an "insured" in accordance with A.1. and A.2. above and you are:

a.    An individual, you and your spouse are "insureds," but only with respect to the conduct of a business of which you are the sole owner.

    b.    A partnership or joint venture, you are an "insured." Your members, your partners, and their spouses are also "insureds," but only with respect to the conduct of your business.

    c.    A limited liability company, you are an "insured." Your members are also "insureds," but only with respect to the conduct of your business. Your managers are "insureds," but only with respect to their duties as your managers.

    d.    An organization other than a partnership, joint venture or limited liability company, you are an "insured." Your "executive officers" and directors are "insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "insureds," but only with respect to their liability as stockholders.

    e.    A trust, you are an "insured." Your trustees are also "insureds," but only with respect to their duties as trustees.

**B.5.**    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, over which you maintain ownership or majority interest, will qualify as an "insured" if there is no other similar insurance available to that organization. However:

    a.    coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period," whichever is earlier;

    b.    this insurance does not apply to "bodily injury" or "property damage" that occurred or began to occur before you acquired or formed the organization;

    c.    this insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    d.    we reserve the right to charge an additional premium if such organization qualifies as an "insured."

**B.6.**    Any person or organization not a Named Insured under this policy but to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into, prior to the applicable "occurrence", which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including "your work" and "your product," or premises owned by or rented to you. However, the insurance provided will not exceed the coverages and Limits of Insurance of this policy.

    However, no such person or organization is an "additional insured" by virtue of this provision B.6. Section II. **INSUREDS**, if such person or organization is a partnership, joint venture or limited liability company of which the "insured" is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

**C.**    Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not an "insured" pursuant to Section **II. INSUREDS** A. above.

Section **III. DUTY TO DEFEND, DEFENSE EXPENSE AND SUPPLEMENTARY PAYMENTS**, Paragraph A. is deleted in its entirety and replaced by the following:

A. We will have the right and duty to defend the "insured" against any "suit" claiming damages for "bodily injury," "property damage", "personal and advertising injury", or a "wrongful act" (if applicable) even if meritless, false or fraudulent, to which this insurance applies when the applicable "retained limit" has been exhausted by payment of "loss" to which this policy applies and the total applicable limits of "other insurance" have been exhausted.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

Section **V. EXCLUSIONS**, is amended by the addition of the following provision:

As respects any exclusion included in this policy (including by way of endorsement) which provides for an exception to the exclusion to the extent such coverage is provided by "scheduled underlying insurance," any such exclusion shall not apply to the coverages listed in the Schedule of Retained Limits unless provided otherwise by separate endorsement to this policy.

Section **V. EXCLUSIONS**, Paragraphs **I. Employer's Liability** and **N. Liquor Liability** are deleted in their entireties unless amended by separate endorsement to provide otherwise.

Section **VI. CONDITIONS**, Paragraphs **A.** and **C.** are deleted in their entireties and replaced by the following:

**A. Appeals**

If the "insured" or the "insured's" underlying insurers do not appeal a judgment in excess of the total applicable "retained limit(s)," we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

**C. Bankruptcy**

Your bankruptcy, insolvency, refusal or inability to pay will neither relieve us of nor increase our obligations under this policy. Under no circumstances will such bankruptcy, insolvency, refusal or inability to pay require us to drop down, replace, or assume, any obligation with respect to  any coverages listed in the Schedule of Retained Limits, and this policy will apply as if the "retained limit(s)" is fully available and collectible.

Section **VII. DEFINITIONS**, Paragraph M. is deleted in its entirety and replaced by the following:

M. "Loss" means those sums paid in the settlement of a claim or "suit" or satisfaction of a judgment which the "insured" is legally liable to pay as damages because of "bodily injury", "property damage", "personal and advertising injury", or "wrongful act" (where applicable) after making proper deduction for all recoveries and salvages, provided, however, that if the applicable Retained Limit(s) is specifically designated in the Schedule of Retained Limit(s) as including "defense expenses", then "loss" shall include such "defense expenses".

Section **VII. DEFINITIONS**, Paragraph V. is deleted in its entirety and replaced by the following:

V.     "Retained limit(s)" means the applicable limit(s) listed in the Schedule of Retained Limit(s). The "retained limit(s)" listed in the Schedule of Retained Limits will apply whether or not there is any available "scheduled underlying insurance" or "other insurance".  If there is "scheduled underlying insurance" or "other insurance" applicable to a "loss", amounts received through such "scheduled underlying insurance" or "other insurance" for payment of the "loss" may be applied to reduce or exhaust the "retained limit." Furthermore:

a.  If the applicable "retained limit(s)" is specifically designated in the Schedule of Retained Limit(s) as including "defense expenses," then amounts received through "scheduled underlying insurance" or "other insurance" providing coverage to the "insured" for the payment of "defense expenses" shall reduce the "retained limit";

b.  If the applicable "retained limit" is not specifically designated in the Schedule of Retained Limit(s) as including "defense expense," then amounts received through such "scheduled underlying insurance" or "other insurance" providing coverage to the "insured" for the payment of "defense expenses" shall not reduce the "retained limit(s)."

Section **VII. DEFINITIONS** is amended to include the following additional definition:

"Defense expenses" means payment(s) allocated to the investigation, settlement or defense of a specific "loss," claim or "suit," including but not limited to:

1.  attorney's fees and all other investigation, loss adjustment and litigation expenses;

2.  premiums on bonds to release attachments;

3.  premiums on appeal bonds required by law to appeal any claim or "suit";

4.  costs taxed against the "insured" in any claim or "suit";

5.  pre-judgment interest awarded against the "insured"; and

6.  interest that accrues after entry of judgment.

If another endorsement attached to this policy states specifically that the provisions therein supersede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

Attachment: Refer to Schedule of Retained Limits (CU00168)

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**EMPLOYEE BENEFITS LIABILITY LIMITATION**
**(CLAIMS MADE VERSION)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE. PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**IT IS AGREED THAT, TO THE EXTENT THAT ANY COVERAGE UNDER THIS ENDORSEMENT MAY DIFFER FROM THE COVERAGE OTHERWISE PROVIDED UNDER THIS POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability Exclusion**

This insurance excludes from coverage any liability arising out of:

1.  any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by "ERISA" or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2.  any act, error or omission committed by or on behalf of the "insured" solely in the performance of one or more of the following administrative duties or activities:

    a.  giving counsel to "employees" with respect to a "plan";

    b.  interpreting a "plan";

    c.  handling of records in connection with a "plan";

    d.  effecting enrollment, termination or cancellation of "employees" under a "plan"; or

    e.  any "claim" against an "insured" solely by reason of his, her or its status as an administrator, the "plan", or you as sponsor of the "plan".

    However, this paragraph 2 will not apply only if and to the extent that coverage for such liability is provided by "scheduled underlying insurance."

Solely as respects this endorsement, this policy will only provide coverage for a "claim" made against the "insured" during the "policy period":

   a)  if the insurance provided by "scheduled underlying insurance" provides coverage for "occurrences" occurring on or after a specified retroactive date for a "claim" for damages because of "bodily injury" or "property damage" or "personal and advertising injury" first made in writing against any "insured" in accordance with Paragraph b) below during the "policy period" or any extended reporting period we provide and written notice is received by us during the "policy period" or extended reporting period (if applicable);

   b)  a "claim" by any person or organization seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any "insured" in writing and reported to us during the "policy period" or any applicable extended reporting period.

Notwithstanding the above, this insurance shall not apply to:

1.  any "claim" alleging or arising out of an "occurrence" committed on or after the retroactive date set forth in the "scheduled underlying insurance", if the "insured", an officer, manager in your risk management, insurance or legal department or an "employee" who was authorized by you to give or receive notice of an "occurrence", knew as of the Continuity Date that such "occurrence" could result in a "claim".

2.  any "claim" alleging or arising out the same "occurrence" or series of continuous, repeated or related "occurrences" or alleging the same or similar facts, alleged or contained in any "claim" which has been reported, or any "occurrence" of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3.  any "claim" alleging or arising out of any "claim" or "suit" pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or "occurrence" alleged in such "claim" or "suit".

If "scheduled underlying insurance" does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance", subject to the "policy period", Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. However, coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance".

Section **VII. DEFINITIONS** is amended to include the following additional definitions:

"Claim" means a written demand upon the "insured" for compensatory damages or services and shall include the service of Suit or institution of arbitration proceedings against the insured.

"ERISA" means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a "plan" is subject.

"Plan" means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of "ERISA" or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1.  a welfare plan, as defined in "ERISA" or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.  a pension plan as defined in "ERISA" or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3.  a combination of 1. and 2. above.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**FOREIGN LIABILITY LIMITATION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Foreign Liability**

This policy excludes from coverage any liability for "bodily injury" or "property damage" or "personal and advertising injury" caused by an "occurrence" that takes place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

However, this exclusion will not apply if coverage is provided for "bodily injury" or "property damage" or "personal and advertising injury" by "scheduled underlying insurance".  Coverage under this policy for such "bodily injury" or "property damage" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance", subject to the "policy period", Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. However, coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance".

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VI. CONDITIONS**, Paragraph **F. Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following additional provision:

Notwithstanding any provision(s) in this policy to the contrary, and solely as respects any loss reporting requirements under this policy, it is understood that knowledge of "occurrence" by the agent, servant, or employee of the "insured" or any other person shall not in itself constitute knowledge by the "insured" unless the Risk Manager or Risk Management Department received notice from said agent, servant, employee or any other person.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## North American Elite Insurance Company

Endorsement No.

**NOTICE OF CLAIM ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VI. CONDITIONS**, Paragraph **F. Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following:

**Notice of Claim Endorsement**

Your failure to report a claim to us shall not invalidate coverage under this policy if the "loss" was inadvertently reported to another insurer. However, you shall report any such claim to us within a reasonable time after you become aware of such error.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**WAIVER OF SUBROGATION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VI. CONDITIONS** is amended to include the following additional provision:

**Waiver of Subrogation**

In the event of any payment under this policy for a "loss" for which you have waived the right of recovery in a written contract entered into prior to the "loss," we hereby agree to also waive our right of recovery. This waiver shall only apply with respect to a "loss" occurring due to operations undertaken as per the specific contract in which you waived the right of recovery.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

## DISCRIMINATION LIABILITY EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Discrimination**

This policy excludes from coverage any liability arising out of discrimination based upon age, gender, race, color, national origin, creed, religion, sexual orientation, marital status, veterans status, pregnancy, sickness, disease, disability, physical capabilities, physical characteristics, physical condition, mental capabilities, mental condition, or any other similar category or class, committed or alleged to have been committed by an "insured", or by any other for whom an "insured" is actually or allegedly responsible, whether intentional or unintentional, and whether the discrimination is direct or indirect.

No inference shall be made from the omission of a category or class in the above paragraph that coverage applies to such omitted category or class.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**SILICA EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

This policy excludes from coverage:

(i)     "Bodily injury" arising out of the inhalation or ingestion of  "silica," "silica" fiber(s), or "silica dust" or any product(s) containing "silica," "silica" fiber(s), or "silica dust."

(ii)    "Personal and advertising injury" arising out of "silica," "silica" fiber(s), or "silica dust" or any product(s) containing "silica," "silica" fiber(s), or "silica dust."

(iii)   Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica dust," by any "insured" or by any other person or entity.

Section **VII. DEFINITIONS** is amended to include the following additional definitions:

"Silica" means:

1.     The substance commonly known as silica; and

2.     Any substance or product which has the same or substantially similar chemical formulation, structure or function as silica, by whatever name manufactured, formulated, structured, sold or distributed.

"Silica dust" means:

1.     Dust comprising of "silica" only; and

2.     Dust comprising of "silica" mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

CU00123 0116                                                                                                          Page 1 of 1

# *North American Elite Insurance Company*

Endorsement No.

### SPECIFIC ENTITY EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Specific Entity**

The persons or organizations specified below shall not be an "insured" under this policy.

SPECIFIED PERSONS OR ORGANIZATIONS:

Aqua-PVR Water Services, LLC

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

CU00124 0812                                                                                      Page  1  of  1

# *North American Elite Insurance Company*

Endorsement No.

### LAW OF VENUE MOST FAVORABLE TO INSURABILITY
### OF PUNITIVE DAMAGES

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **I. INSURING AGREEMENT** is amended to include the following additional paragraph:

**Law of Venue Most Favorable to Insurability of Punitive Damages**

It is agreed that the law of the venue most favorable to the insurability of punitive or exemplary damages, or of the multiplied portion of multiplied damages, shall govern this policy as respects the insurability of an award of such damages, provided that such venue is the jurisdiction:

1.    where the punitive, exemplary or multiplied damages were awarded or imposed; or

2.    where the "occurrence" causing the "bodily injury" or "property damage", or the offense giving rise to the "personal and advertising injury" took place; or

3.    where we are incorporated, reside, or have our principal place of business, or where any "insured" penalized by such damages is incorporated, resides, or has its principal place of business; or

4.    where this policy was issued or delivered to the "insured".

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**BROADENED DEFINITION OF BODILY INJURY ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VII. DEFINITIONS**, Letter C is deleted in its entirety and replaced with the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish, mental injury, shock or humiliation resulting from "bodily injury".

Coverage under this policy for such "bodily injury" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance", subject to the "policy period", Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  However, coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance".

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**AMENDMENT OF CANCELLATION CONDITION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VI. CONDITIONS D. Cancellation** is deleted in its entirety and replaced with the following:

**D.     Cancellation**

1.     You may cancel this policy. You must mail or deliver to us advance written notice stating when cancellation is to take effect.

2.     We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in the Declarations will be sufficient to prove notice. If we cancel for any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation as amended by a state cancellation endorsement applicable to this insurance, is increased to ninety (90) days.

3.     The "policy period" will end on the day and hour stated in the cancellation notice.

4.     If we cancel, final premium will be calculated pro rata based upon the time this policy was in force. Final premium will not be less than the pro rata share of the Policy Premium as shown in the Declarations.

5.     If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Policy Premium as shown in the Declarations.

6.     Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.     The first Named Insured shown in the Declarations will act on behalf of all other "insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## *North American Elite Insurance Company*

Endorsement No.

**ADDITIONAL INSURED PRIMARY AND NON-CONTRIBUTORY ENDORSEMENT –
AUTOMATIC STATUS WHEN REQUIRED IN AGREEMENT BY YOU**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

1.   Section **II. INSUREDS B**. is amended to include the following additional provision:

When you and any person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, such person or organization  shall be included as an additional insured under this policy.  Such person or organization is an additional insured but only with respect to its liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1.   in the performance of your ongoing operations; or

2.   in connection with your premises owned by or rented to you.

However:

a.   The insurance afforded to such additional insured only applies to the extent permitted by law;

b.   The insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured; and

c.   The insurance afforded to such additional insured coverage will not be broader than coverage provided by "scheduled underlying insurance." This shall not apply to any coverage listed in the Schedule of Retained Limits (CU00168).

2.   Solely as respects the insurance afforded to any person or organization(s) by this endorsement, Section **IV. LIMITS OF INSURANCE** is amended to include the following additional provision:

The most we will pay on behalf of any additional insured is the amount of insurance:

1.   Required by the contract or agreement whereby you agreed such person or organization shall be included as an additional insured under your policy; or

2.   Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

3.   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

4.    Solely as respects the insurance afforded to any person or organization(s) by this endorsement, the following is added to Section **VI. CONDITIONS I. Other Insurance** and supersedes any provision to the contrary:

**Primary and Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

1.    The additional insured is a Named Insured under such other insurance; and

2.    You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## *North American Elite Insurance Company*

Endorsement No.

**ADVICE OF CANCELLATION TO ENTITIES OTHER THAN NAMED INSURED**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

In the event that we cancel this policy for any reason other than non-payment of premium, and:

1.     The cancellation effective date is prior to this policy's expiration date;

2.     The Named Insured is under an existing contractual obligation to notify a Certificate Holder listed in the Schedule below when this policy is canceled; and

3.     The Named Insured has provided to us, either directly or through its broker of record, either:

   a.     the name of the entity listed in the Schedule of Certificate Holders, a contact name at such entity and the postal service mailing address of each such entity; or

   b.     the e-mail address of the contact person for entity listed in the Schedule of Certificate Holders listed in the Schedule of Certificate Holders,

then we will endeavor to provide notice of such cancellation to the Certificate Holder listed in the Schedule of Certificate Holders.

This endorsement does not affect, in any way, coverage provided under this policy or the cancellation of this policy or the effective date thereof, nor shall this endorsement invest any rights in any entity not insured under this policy.

**SCHEDULE OF CERTIFICATE HOLDERS**

| **Name of Certificate Holder** | **Address of Certificate Holder and Contact Details** |
|---|---|
| Donlen | agonkee@donlen.com - 2315 Sanders Road, Northbrook, IL 60062 |

# *North American Elite Insurance Company*

Endorsement No.

**BROAD FORM NAMED INSURED ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

1.    Section **II. INSUREDS** A. is deleted in its entirety and replaced with the following:

A.    The following are "insureds":

1.    The Named Insured named in Item 1. of the Declarations of this policy is an "insured."

2.    Any direct or indirect subsidiary, limited liability company, division, joint venture or partnership,  in respect of which the Named Insured named in Item 1. of the Declarations of this policy at the inception date of this policy:

a.    has an ownership interest of fifty percent (50%) or more;

b.    exercises management control; or

c.    has agreed in writing to assume the obligation to provide insurance of the type afforded by this policy for the entire direct or indirect subsidiary, limited liability company, division, joint venture or partnership,

is an "insured," provided that such subsidiary or organization is an insured in the "scheduled underlying insurance."

3.    If you are an "insured" in accordance with A.1. and A.2. above and you are:

a.    An individual, you and your spouse are "insureds," but only with respect to the conduct of a business of which you are the sole owner.

b.    A partnership or joint venture, you are an "insured."  Your members, your partners, and their spouses are also "insureds," but only with respect to the conduct of your business.

c.    A limited liability company, you are an "insured." Your members are also "insureds," but only with respect to the conduct of your business. Your managers are "insureds," but only with respect to their duties as your managers.

d.    An organization other than a partnership, joint venture or limited liability company, you are an "insured." Your "executive officers" and directors are "insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "insureds," but only with respect to their liability as stockholders.

e.    A trust, you are an "insured." Your trustees are also "insureds," but only with respect to their duties as trustees.

2.    Section **II. INSUREDS** C. is deleted in its entirety and replaced with the following:

Notwithstanding anything above, no person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not an "insured" pursuant to Section **II. INSUREDS** A. above.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**AMENDMENT TO DEFINITION OF "INSURED CONTRACT" ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **VII. DEFINITIONS** J. "Insured Contract" is deleted in its entirety and replaced with the following:

J.  "Insured contract" means that part of any contract or agreement pertaining to your business under which any "insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured contract" does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2.  under which the "insured," if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 1. above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**INCIDENTAL MEDICAL MALPRACTICE LIMITATION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is amended as follows:

**A.**    Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Incidental Medical Malpractice Limitation Endorsement**

1.    This insurance excludes from coverage any actual or alleged liability arising out of, based upon or attributable to, any act, error, omission, malpractice or mistake committed by any "insured" or any person for whom the "insured" is legally responsible in the provision or failure to provide, healthcare or medical services, including the furnishing of food or beverage in connection with such service. Such healthcare or medical services include but are not limited to medical, surgical, dental, x-ray or nursing services or treatment and/or the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

    This exclusion shall apply to any claim against any "insured" arising out of any actual or alleged act, error or omission, malpractice or mistake committed in the provision, or failure to provide, healthcare or medical services (as described above) which is based on or attributable to, wholly or in part, actual or alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by such "insured."

2.    Notwithstanding item 1. above:

    a.    if any "scheduled underlying insurance" provides insurance coverage for liability arising out of "incidental medical malpractice," this exclusion shall not apply to liability arising out of "incidental medical malpractice" and coverage for such "incidental medical malpractice" liability under this policy will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance," subject to the "policy period," Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. However, coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance."

    b.    if coverage for "bodily injury" or "personal and advertising injury" is provided under this policy over a retained limit listed in the Schedule of Retained Limits, this exclusion shall not apply to liability arising out of "incidental medical malpractice" and this policy shall provide coverage for such "incidental medical malpractice" liability subject to the same Limits of Insurance, Conditions and other terms and conditions, and exclusions of this policy.

**B.**     Section **II. INSUREDS**, B.1.a. (4) shall be deemed deleted in its entirety and replaced with:

(4)     arising out of his or her providing or failing to provide professional heath care services, except for "bodily injury" or "personal and advertising injury" arising out of "incidental medical malpractice" by any licensed physician, dentist, nurse or other licensed medical practitioner employed by "you" and acting within the scope of his or her license.  The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside the scope of their duties as your "employees."  Any series of continuous, repeated or related acts or omissions by such "employees" will be treated as a single "occurrence."

**C.**     Section **VII. DEFINITIONS** is amended to include the following additional definition:

"Incidental medical malpractice" means "bodily injury" or "personal and advertising injury" arising out of the rendering of or failure to render the following services:

1.     medical, surgical, dental, x-ray or nursing services or treatment or the furnishing of food or beverages in connection therewith; or

2.     the furnishing or dispensing of drugs or medical or surgical supplies or appliances;

so long as the Named Insured is not engaged in the business or occupation of providing any of the services described in items 1. or 2. above.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# North American Elite Insurance Company

Endorsement No.

**BUSINESS CRISIS MANAGEMENT COST COVERAGE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I., INSURING AGREEMENT**, is amended to include the following:

Business Crisis Management Cost Limit of Insurance: $ 250,000  Annual Limit

**Business Crisis Management Cost Coverage**

A.    Subject to the terms and conditions of this endorsement, we will pay "business crisis management costs" to third parties at the request of and on behalf of the "insured," arising from a "business crisis management event" first commencing during the "policy period," up to the amount of the "business crisis management costs" Limit of Insurance shown in the schedule above.

B.    A "business crisis management event" will be deemed to first commence at the time during the "policy period" when a "key executive" first becomes aware of an "occurrence" that gives rise to the "business crisis management event" and will end when we determine that any one of the necessary elements listed in the definition of a "business crisis management event" no longer exists or when the "business crisis management cost" Limit of Insurance shown in the schedule above has been exhausted, whichever occurs first.

C.    There is no "retained limit" applicable to "business crisis management costs," except as a "retained limit" applies to a determination of whether the definition of "business crisis management event" applies.

D.    Payment of "business crisis management costs" will not be applied to or erode any aggregate limits of the policy.

E.    Any payment of "business crisis management costs" that we make under the coverage provided by this endorsement will not:

    1.    be a determination of any other rights or obligations under this policy;

    2.    create any duty to defend any "suit" under any other part of this policy; or

    3.    operate as a waiver of any right or defense we have with respect to the coverage under the policy, including Condition F. (Duties in the event of an "Occurrence," Claim or "Suit.")

F.    Solely as respects coverage provided by this endorsement, the **SECTION VI. CONDITIONS** paragraph **F. Duties in the Event of an Occurrence, Claim or Suit** is amended by the addition of the following conditions:

You must see to it that we are notified of any "business crisis management event" within twenty-four (24) hours of the time that a "key executive" first becomes aware of an "occurrence" that gives rise to a "business crisis management event" or as soon as reasonably practicable, to be eligible for the advancement of "business crisis management costs."

Notice of a "business crisis management event" shall be given by written notice to the address detailed below.  Written notice should include:

    1.    Name of Insured;

    2.    Policy Number;

3.    A description of the incident;

4.    Any witnesses;

5.    Property, Product or Vehicle Information;

6.    Incident Location;

7.    Contact Person;

8.    Number and nature of bodily injuries (including any fatalities and the number of people injured);

9.    Current status of the situation

Written notice should be mailed, e-mailed, or delivered to:

Email Address: NY_Casualty@swissre.com

If email services are not available, please send by regular or overnight mail to:
North American Elite Insurance Company
Attention: Claims Department
5200 Metcalf Avenue
Overland Park, KS 66202


G.    For purposes of this endorsement, **SECTION VII. DEFINITIONS** is amended by the addition of the following definitions:

"Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

"Business crisis management event" means an "occurrence" that, in the good faith opinion of a "key executive" of the Named Insured, has resulted in or is reasonably likely to result in: (1) "bodily injury," "property damage" or "personal and advertising injury" covered by this policy; (2) damages that are in excess of the "retained limit"; and (3) a need for "business crisis management services" due to "adverse media coverage." "Business crisis management event" will include "occurrences" resulting from: explosions and other man-made disasters; serious accidents resulting in multiple deaths, burns, dismemberment injuries; traumatic brain injuries; permanent paralysis injuries; or injuries from contamination of food, drink or pharmaceuticals.

"Business crisis management firm" means any firm that is approved by us and hired by you or us to perform "business crisis management services" in connection with a "business crisis management event." Any "business crisis management firm" which has been retained by you on a continuous and uninterrupted basis from a date preceding the "business crisis management event" for which coverage is sought under this endorsement up until the date of such event, shall be deemed approved by us.

"Business crisis management services" means those services performed by a "business crisis management firm" in advising the "insured" on minimizing potential harm to the "insured" from a covered "business crisis management event" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured."

"Business crisis management costs" means the following reasonable and necessary fees and  expenses incurred during a "business crisis management event" and directly caused by the "business crisis management event," but only to the extent that the "insured," the "business crisis management firm"  or a third party authorized by us or the "business crisis management firm," arranges for such services resulting in these fees and expenses and the fees and expenses are pre-approved by us:

1.    fees charged by a "business crisis management firm" for the performance of "business crisis management services" for the "insured";

2.    expenses incurred by a "business crisis management firm" in the performance of "business crisis management services" for the "insured";

3.    fees and expenses for printing, advertising, mailing of materials or travel by directors, officers, employees or agents of the "insured" or the "business crisis management firm" incurred at the direction of a "business crisis management firm";

4.    fees and expenses to secure the scene of a "business crisis management event";

5.    medical expenses; funeral expenses; expenses for psychological counseling; travel expenses; temporary living expenses or other necessary response costs approved by us, incurred by or advanced to third parties directly harmed by the "business crisis management event."

"Business crisis management costs" do not include any defense costs.

"Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the "insured" is a partnership) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured." A "key executive" also means any other person holding a title designated by you, approved by us, and shown by endorsement to this policy.

### NOTICE

IF YOU REQUIRE ADVICE AS TO AN APPROVED BUSINESS CRISIS MANAGEMENT FIRM PLEASE CONTACT ONE OF THE ATTACHED FIRMS LISTED BELOW. NO BUSINESS CRISIS MANAGEMENT SERVICES WILL BE PROVIDED BY ANY SUCH FIRM UNLESS PRE-APPROVED BY US:

The Torrenzano Group attn; Richard Torrenzano
60 East 42nd Street, Suite 2112, New York, NY 10165
During business hours: 212-681-1700 ext 111 After hours: 917-226-1000
E-Mail: Richard@Torrenzano.com

Inform The Agency attn.: Melanie Dougherty Thomas, CEO & Managing Director
1701 Pennsylvania Avenue, Suite 300, Washington, DC 20006
www.InformTheAgency.com
mthomas@informtheagency.com
O: 202-349-1493; M: 202-390-7887; EMERGENCY: 844-678-8866

PLEASE BE PREPARED TO PROVIDE THE FOLLOWING INFORMATION:

- Caller's name, title and contact telephone number;
- Name of Insured;
- Policy Number;
- A description of the incident
- Any witnesses
- Property, Product or Vehicle Information
- Incident Location
- Contact Person
- Number and nature of bodily injuries (including any fatalities and the number of people injured)
- Current status of the situation

THE CONTENTS OF THIS NOTICE ARE NOT PART OF THE POLICY FORM AND NO COVERAGE IS PROVIDED AND/OR MODIFIED BY THE CONTENTS OF THIS NOTICE.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**LIQUOR LIABILITY EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS N. Liquor Liability** is deleted in its entirety and replaced with the following:

N.     **Liquor Liability**

This policy excludes from coverage "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1.     causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

2.     the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.     any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in:

a.     The supervision, hiring, employment, training or monitoring of others by that "insured"; or

b.     Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in Paragraph 1., 2. or 3. above.

This exclusion applies only if you:

1.     Manufacture, sell or distribute alcoholic beverages;

2.     Serve or furnish alcoholic beverages for a charge whether or not such activity:

a.     Requires a license;

b.     Is for the purpose of financial gain or livelihood;

3.     Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

4.     Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

This exclusion does not apply to the extent that such coverage is provided by "scheduled underlying insurance" or would have been provided but for the exhaustion of the applicable limits of "scheduled underlying insurance" by the payment of "loss" covered by this policy. However, the coverage provided by this policy shall be no broader than coverage provided by such "scheduled underlying insurance."

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## *North American Elite Insurance Company*

Endorsement No.

**VIOLATION OF COMMUNICATION OR INFORMATION LAW EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section **V. EXCLUSIONS** V. **Violation of Communication or Information Law** is deleted in its entirety and replaced with the following:

V.    **Violation of Communication or Information Law**

"Bodily injury" or "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3.    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

4.    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**ACCESS, COLLECTION AND DISCLOSURE OF INFORMATION EXCLUSION –
LIMITED BODILY INJURY AND PROPERTY DAMAGE COVERAGE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

A.   Section **V. EXCLUSIONS** is amended to include the following additional exclusions:

**Access, Collection and Disclosure of Information**

1.   This policy excludes from coverage any injury, damage, cost, "loss," liability, or legal obligation arising out of or in any way related to any unauthorized access to or collection of any person's or organization's confidential or personal information in the form of electronic data, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

2.   This policy excludes from coverage any injury, damage, cost, "loss," liability, or legal obligation arising out of or in any way related to any intentional release or disclosure of any person's or organization's confidential or personal information in the form of electronic data made by any "insured" or employee of any "insured" with unlawful intent or intentionally in violation of   any "insured's" procedures or policies designed to protect the confidentiality of any person's or organization's confidential or personal information.

3.   The exclusions stated in items 1. and 2. above do not apply to damages because of "bodily injury" or "property damage."

4.   Any coverage for damages because of "bodily injury," "property damage" and "personal and advertising injury" arising out of any access to, collection of, or disclosure or release of any person's or organization's confidential or personal information provided by this policy by virtue of the exception to this exclusion stated in item 3. above or otherwise, does not apply to, and no coverage is provided by this policy for, any notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other similar expenses incurred by you or others arising out of any access to, collection of, or disclosure or release of any person's or organization's confidential or personal information.

B.   As respects any coverage provided by this policy for damages because of "bodily injury," "property damage" or "personal and advertising injury" arising out of any access to, collection of, or disclosure or release of any person's or organization's confidential or personal information, by virtue of the exception to the exclusion stated in paragraph A.3. above or otherwise, Section **VII. DEFINITIONS** paragraph V. "Retained limit" is:

"Retained limit"

(a)   when this policy is not subject to a Designated Coverage Retained Limit Amendatory Endorsement , "retained limit" means:

(i)   the total applicable limits of "scheduled underlying insurance" providing coverage to the "insured"; or

     (ii)    with respect to any "occurrence" that results in damages which are not covered by "scheduled underlying insurance," the each "occurrence" limit of insurance of the applicable commercial general liability policy of insurance included in the Schedule of Underlying Insurance subject to the application of any general aggregate limit in accordance with the terms and conditions of such policy (including any reduction of such general aggregate limit by payment of covered loss).

(b)    when this policy is subject to a Designated Coverage Retained Limit Amendatory Endorsement, "retained limit" means the applicable limit(s) listed in the Schedule of Retained Limits.

With respect to this item (b), the "retained limit(s)" listed in the Schedule of Retained Limits will apply whether or not there is available "scheduled underlying insurance." If there is "scheduled underlying insurance" applicable to a "loss," amounts received through such "scheduled underlying insurance" for payment of "loss" may be applied to reduce or exhaust the "retained limit."

(c)    For the purposes of this policy, in no event shall the "retained limit" or any applicable limit of insurance of "scheduled underlying insurance" be reduced or exhausted by any payment made with respect to any defense and investigation expense, including supplementary payments, arising out of or in any way related to any injury, damage, cost, "loss," liability, or legal obligation which (i) is excluded by this policy; or (ii) arises from any access to, collection of, or disclosure or release of any person's or organization's confidential or personal information regardless of whether such coverage is provided by this policy by virtue of the exception to the exclusion stated in paragraph A. 3. of the Access, Collection and Disclosure of Information Exclusion – Limited Bodily Injury and Property Damage Coverage Endorsement to this policy, or otherwise.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## *North American Elite Insurance Company*

Endorsement No.

**ELECTRONIC CHAT ROOMS OR BULLETIN BOARDS AND ELECTRONIC DATA EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

A.    Section **V. EXCLUSIONS** paragraph H. is deleted in its entirety and replaced with the following:

H.    **Electronic Chat Rooms or Bulletin Boards**

This policy excludes from coverage "personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

B.    Section **V. EXCLUSIONS** is amended to include the following additional exclusion:

**Electronic Data**

This policy excludes from coverage any injury, damage, cost, "loss," liability, or legal obligation arising out of or in any way related to any actual or alleged loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data."

C.    Section **VII. DEFINITIONS** is amended to include the following additional defined term:

"Electronic data" means any information, facts or programs stored as or on, created or used on, or transmitted to or from any computer software or system, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment or other electronic backup facilities, and data transmission or storage provided by means of the Internet.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

CU00294 1015

Page 1 of 1

# *North American Elite Insurance Company*

Endorsement No.

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

A.   If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "bodily injury," "property damage" or "personal and advertising injury" which is otherwise excluded under this policy.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

# *North American Elite Insurance Company*

Endorsement No.

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**SCHEDULE**

---

**Terrorism Premium (Certified Acts)   $15,000**
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

**The above premium does not include any charges for the share of terrorism losses reimbursed to the insurer by the United States Government under the Act.**

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A.    Disclosure Of Premium**

   In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.     Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage as follows of that portion of the amount of such insured losses that exceeds the applicable insurer retention:

- 85% for losses occurring in 2015;
- 84% for losses occurring in 2016;
- 83% for losses occurring in 2017;
- 82% for losses occurring in 2018;
- 81% for losses occurring in 2019;
- 80% for losses occurring in 2020.

However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.     Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

## North American Elite Insurance Company

[ Endorsement No.    ]

**POLYCHLORINATED BIPHENYLS (PCBs) EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
> GARAGE COVERAGE PART
> MOTOR TRUCK CARGO COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" that arises out of, or allegedly arises out of, exposure to or the presence of Polychlorinated Biphenyls whether such "pollutants" are alone or combined with any other substances or factors, whether included in a product or otherwise.  This exclusion applies regardless of whether such exposure occurs inside or outside a building.

Without limiting or expanding the term "pollutants" as used in any policy issued by us, the following sentence is included in the definition of "pollutants":

"Pollutants" include, but are not limited to, Polychlorinated Biphenyls.

This exclusion applies whether or not Polychlorinated Biphenyls have any function in your business, operations, premises, site or location.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

Policy Number:

Endorsement Effective Date:

Named Insured:

DR 10 917 0915                                                                                                    Page 1 of 1

## *North American Elite Insurance Company*

**POLLUTION EXCLUSION – NAMED PERIL EXCEPTION WITH SELF-INSURED RETENTION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**SCHEDULE**

| | |
|---|---|
| **Coverage:** | Pollution Exclusion – Named Peril Exception Self Retention Endorsement |
| **Self-Insured Retention:** | **$10,000,000** |
| **Per Occurrence:** | **$10,000,000** |

A.   Our obligation to pay damages on your behalf pursuant to this endorsement applies only to the amount of damages in excess of the:

    1.   Self-Insured Retention amount stated in the Schedule above as applicable to such coverage; and

    2.   "retained limits."

B.   The Self-Insured Retention amount stated in the Schedule above applies as follows:

    1.   On a per occurrence basis;

    2.   The Self-Insured Retention will not be reduced by any "retained limits" as shown in Item 5. of the Declarations;

    3.   The Self-Insured Retention will not be reduced by defense expenses allocated to defend a "suit" by the "insured" including but not limited to:

        a.   Attorney's fees and all other investigation, loss adjustment and litigation expenses;

        b.   Premiums on bonds to release attachments;

        c.   Premiums on appeal bonds required by law to appeal any claim or "suit;"

        d.   Court costs taxed against the "Insured;"

        e.   Interest that accrues after entry of judgement.

**SECTION V. EXCLUSIONS**, P. Pollution is deleted in its entirety and replaced with the following:

P.    Pollution

This insurance shall not apply to:

1.    Damages arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.    Any damage, loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

3.    Any loss, cost, or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

This exclusion does not apply and the "Insured" is not subject to the Self-Insured Retention stated in the Schedule above if the "retained limits" for the pollution liability risks described above exists or would have existed but for the exhaustion of such "retained limits." For purposes of this paragraph, coverage provided under this Policy will follow the terms, definitions, conditions, exclusions and limitations of the first underlying insurance as described in the "scheduled underlying insurance."

This exclusion will not apply to damages arising out of the scenarios described in paragraphs 1. and 2. below and in excess of the Self-Insured Retention stated in the Schedule above.

1.    Any discharge, dispersal, seepage, migration, release or escape caused by a hostile fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, collision or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage; or

2.    The products-completed operations hazard or the presence of any contaminant, or pollutant, including hazardous substances, hazardous materials, within potable, reclaimed or recycled water that has been sold or distributed by a "named insured," provided that the use occurs after the Named Insured has relinquished possession of the aforementioned water.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

Policy Number:

Named Insured:

Endorsement Effective Date: