IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSENTIAL UTILITIES, INC., et al.  :
                                    :    CIVIL ACTION
      v.                               :    NO. 22-1559
                                    :
SWISS RE GROUP, et al.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      FEBRUARY 1, 2023

This action involves alleged breaches of insurance contracts. Plaintiffs, Essential Utilities and Aqua Illinois ("Plaintiffs"), contend that Defendant Swiss Re Corporate Solutions Elite Insurance ("SRCS Elite"), with whom Plaintiffs have excess insurance policies, is obligated to defend Plaintiffs in two underlying lawsuits involving lead that leached into a public water supply.

Both parties have moved for judgment on the pleadings. SRCS Elite has moved for judgment on Count I of the amended complaint for breach of contract and Count V of the amended complaint for declaratory judgment.[1] Plaintiffs move for partial judgment on Count V of the amended complaint regarding SRCS Elite's duty to defend in the underlying lawsuits.

---

[1] In Count V, Plaintiffs seek a declaration that, inter alia, they are insured under SRCS Elite's policies, that the underlying claims are covered by the policies, and that SRCS Elite has a duty to assume the defense costs and provide a defense.

For the forthcoming reasons, the Court will deny SRCS Elite's motion and grant Plaintiffs' motion.

I.   **BACKGROUND**

   A.   **The Underlying Lawsuits**

Plaintiffs provide drinking water to the residents of the Village of University Park, Illinois. In December 2017, Plaintiffs switched the source of the drinking water and introduced new water treatment chemicals. In May 2019, testing showed unacceptable levels of lead in the water. Two lawsuits were filed against Plaintiffs.

First, on September 3, 2019, Village residents filed a class action against Plaintiffs alleging that Plaintiffs negligently caused lead to leach from the solder and plumbing into the water supply, causing "damages to persons and property." ECF No. 26, ¶ 19 (amended complaint). Second, on September 9, 2019, the Attorney General of Illinois brought an action against Plaintiffs for injunctive and other relief alleging harm to the public health and welfare of the residents due to the lead infiltration.

   B.   **The Insurance Policies**

Plaintiffs had a five-million-dollar pollution liability insurance policy from Chubb Insurance which protected against claims of bodily injury and property damage, including those raised in the underlying lawsuits described above. The Chubb

policy has been exhausted and Chubb has paid five million dollars in indemnity payments and legal defense expenses in connection with the two lawsuits.

Plaintiffs also had two excess general liability insurance policies through SRCS Elite with ten-million-dollar coverage limits in excess of the Chubb policy. These two policies were effective for consecutive annual periods from 2017 to 2019. Having exhausted the Chubb policy, the parties now disagree whether the SRCS Elite policies provide additional coverage in connection with the two underlying lawsuits.

## II.  LEGAL STANDARD[2]

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). If the moving party "establishes that 'there are no material issues of fact, and [the moving party] is entitled to judgment as a matter of law,'" a motion for judgment on the pleadings should be granted. Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the

---

[2]    The parties agree that Pennsylvania law applies and have argued their respective positions based on that law.

motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." Id. at 417-18. Thus, the Rule 12(c) standard mirrors that of a motion to dismiss under Rule 12(b)(6). Id. at 417. "Where both parties file motions for judgment on the pleadings, each party's right to a judgment must be determined from a consideration of the party's own motion as though no motion had been filed by the other party." 61A Am. Jur. 2d, Pleading § 499 (citing State at Inf. McKittrick ex rel. Martin v. Stoner, 146 S.W.2d 891 (Mo. 1941)). Thus, the Court will analyze the parties' motions individually, especially given that they both seek judgment on one of the same Counts of the amended complaint.

Contract interpretation is a question of law to be determined by the court. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). The court will give effect to any clear and unambiguous policy terms, but when a term is ambiguous, "the policy is to be construed in favor of the insured." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (quoting Kvaerner Metals Div., 908 A.2d at 897).

The insured has the burden of establishing coverage under an insurance policy. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001) (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1366 (Pa. 1987)). The

burden shifts to the insurer, however, to show that the loss falls within a specific policy exclusion. Erie Ins. Exch., 533 A.2d at 1366 (quoting Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966)). Thereafter, the burden shifts back to the insured to show that an exception to the exclusion applies. Jugan v. Econ. Premier Assurance Co., 728 F. App'x 86, 90 (3d Cir. 2018) (citing TIG Specialty Ins. v. Koken, 855 A.2d 900, 915 (Pa. Commw. Ct. 2004)); Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co., 182 A.3d 1011, 1027 (Pa. Super. 2018). "[P]olicy exclusions are to be construed narrowly in favor of coverage." Mut. Benefit Ins. Co. v. Politsopoulos, 115 A.3d 844, 852 n.6 (Pa. 2015)).

### III. DISCUSSION

#### A.   SRCS Elite's Motion for Judgment on the Pleadings

SRCS Elite seeks judgment on Counts I and V of the amended complaint which assert a breach of the SRCS Elite policies and seek declaratory relief.

SRCS Elite argues that the policies' pollution exclusion bars the coverage sought and that there are no applicable exceptions to the exclusion; thus, there can be no breach of contract.[3] The Pollution Exclusion provides that:

---

[3]     The pertinent terms of the two policies are the same. Thus, the Court will cite only one of the policies for the sake of simplicity. Specifically, the Court will cite the policy entered

> This insurance shall not apply to [inter alia]:
>
> 2. Any damage, loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants . . . .

ECF No. 21-2, p. 71.[4] There are exceptions to this exclusion however, including that:

> This exclusion does not apply and the "Insured" is not subject to the Self-Insured Retention stated in the Schedule above if the "retained limits" for the pollution liability risks described above exists or would have existed but for the exhaustion of such "retained limits." For purposes of this paragraph, coverage provided under this Policy will follow the terms, definitions, conditions, exclusions and limitations of the first underlying insurance as described in the "scheduled underlying insurance."

Id.[5]

_____

into by the parties in 2018, which is located at ECF No. 21-2, with reference to the relevant ECF page number(s).

[4]    This pollution exclusion is on a schedule attached to the SRCS Elite policies and replaces the pollution exclusion found earlier therein. Compare ECF No. 21-2, p. 71 (the superseding pollution exclusion) with pp. 16-18 (the original pollution exclusion). For the purposes of these motions, the Court assumes the exclusion is applicable in that the underlying lawsuits allege "damage[s] . . . "arising out of [a] request . . . that [the] "insured" . . . in any way respond to . . . the effects of pollutants." ECF No. 21-2, p. 71.

[5]    There is also a separate exclusion that only applies after the "Self-Insured Retention" of ten million dollars has been paid by Plaintiffs. See ECF No. 21-2, p. 70 (the "Self-Insured Retention" schedule) and p. 71 (the pollution exclusion). The parties agree that this condition has not been met.

Thus, while the SRCS policies typically would not apply to damages arising out of a demand that the insured, inter alia, "in any way respond to . . . the effects of pollutants," they will apply if the relevant "retained limits" have been paid by Plaintiffs in relation to the underlying lawsuits. Moreover, if this exception applies, Plaintiffs need not first pay the "Self-Insured Retention" of ten million dollars before the SRCS Elite policies apply. See id. at 70-71.

The policies define "retained limit" as

1. The total applicable limits of "scheduled underlying insurance" and any applicable limit of "other insurance" providing coverage to the "insured"; or

2. The amount shown in the Declarations as the Self-Insured Retention applicable to each "occurrence" that results in damages not covered by "scheduled underlying insurance" or "other insurance."

Id. at 26.

Regarding the first definition of "retained limit, the SRCS Elite policies do list "scheduled underlying insurance," but the parties agree that it is not applicable here and therefore cannot be exhausted or used to reach the "retained limit." See id. at 30 (listing the "scheduled underlying insurance"). "Other insurance" is defined under the SRCS Elite policies as:

a policy of insurance providing coverage for damages covered in whole or in part by this policy. "Other insurance" does not include "scheduled underlying insurance," the amount shown in the Declarations as the Self-Insured Retention or any policy of insurance

specifically purchased to be excess of this policy and
providing coverage that this policy also provides.

Id. at 25. The parties disagree whether the exhausted Chubb

policy is "other insurance" and on the meaning of "retained

limit."[6]

Thus, under the first definition of "retained limit," if

the exhausted Chubb policy is "other insurance," and alone can

comprise the "retained limit," then the SRCS Elite policies will

apply to protect Plaintiffs.

### 1.    The Chubb Policy Is "Other Insurance"

SRCS Elite argues that the Chubb policy is not "other

insurance" because the Chubb policy and SRCS Elite policies do

not cover the exact same risks, noting that the Chubb policy

explicitly includes pollution coverage while the SRCS Elite

policies specifically exclude it.[7]

However, as noted by Plaintiffs, the definition of "other

insurance" in the SRCS Elite policies only requires that the

Chubb policy cover some of the same damages as the SRCS Elite

policies to qualify as "other insurance." Here, both the Chubb

---

[6]    The second definition of "retained limit" only applies if
there is no applicable "scheduled underlying insurance" or
"other insurance" and Plaintiffs have paid the ten-million-
dollar "Self-Insured Retention." As stated, Plaintiffs have not
paid the "Self-Insured Retention."

[7]    The Court notes that defense counsel has previously
identified the Chubb policy as likely "other insurance" in
correspondence with Plaintiffs' counsel. ECF No. 26-8, p. 4.

policy and the SRCS Elite policies cover damages for bodily injury and property damage and the SRCS Elite policy specifically covers pollution loss in certain situations that trigger the exception to the pollution exclusion. ECF No. 26-4, p. 43 (Chubb policy); ECF No. 21-2, pp. 7 & 71 (SRCS Elite policy). Damages for both property loss and bodily injury are sought in the underlying lawsuits.

Thus, the Court concludes that the Chubb policy is "other insurance" under the SRCS Elite policies because the Chubb policy provides coverage for damages covered at least in part by the SRCS Elite policies.

### 2.   The Definition of "Retained Limit"

The parties offer two competing interpretations of "retained limit." SRCS Elite contends that there is no existing "retained limit" that would trigger the exception to the pollution exclusion. Plaintiffs argue that since the exhausted Chubb policy is "other insurance," it sets the "retained limit" and triggers the pollution exclusion exception. The Court concludes that a plain reading of the term "retained limit" shows that Plaintiffs have proffered the correct interpretation.

SRCS Elite argues that for the first definition of "retained limit" to apply, all "scheduled underlying insurance" and all "other insurance" must be exhausted before the SRCS Elite policy covers any excess loss. Because it is undisputed

that the "scheduled underlying insurance" listed in the SRCS policies is inapplicable here, according to SRCS Elite, those coverages can never be exhausted and the first definition can never be met. SRCS Elite further argues that Plaintiffs fail to meet the second definition of "retained limit" because that definition requires Plaintiffs to have satisfied the ten million dollar "Self-Insured Retention," which they have not done. Thus, according to SRCS Elite, there are no existing "retained limits" and the exception to the pollution exclusion does not apply.

Plaintiff correctly notes that SRCS Elite's interpretation ignores the word "applicable" in the "retained limit" definitions. On its face, the first definition of "retained limit" concerns not all but only the "applicable limits" of "scheduled underlying insurance" and any "applicable limit" of "other insurance." Here, there are no applicable limits in any of the "scheduled underlying insurance" but there is a five-million-dollar applicable limit of the exhausted Chubb policy, which is "other insurance." Thus, the first definition of "retained limit" is met after factoring in all applicable "scheduled underlying insurance" limits (zero) and all applicable "other insurance (one).

Ignoring the word "applicable" in these definitions also creates an absurd scenario where SRCS Elite would never be obligated to honor their policies assuming there was at least

one inapplicable "scheduled underlying insurance" or "other insurance" listed in or related to its policy.

SRCS Elite incorrectly asserts that Plaintiffs' construction leads to surplusage because both definitions would be satisfied where the "scheduled underlying insurance" is inapplicable, so long as there is applicable "other insurance." This depiction is facially inaccurate. A plain reading of the term shows that the first definition of "retained limit" is satisfied when there is applicable "scheduled underlying insurance" or applicable "other insurance," while the second definition can only be satisfied in the absence of both.

SRCS Elite also argues that Plaintiffs' interpretation of "retained limit" contradicts the second sentence of the pollution exclusion exception making Plaintiff's interpretation illogical. As stated previously, the pollution exclusion exception is triggered when "retained limits" exist. See ECF No. 21-2, p. 71. The second sentence of the exception continues that when "retained limits" exist, "[f]or purposes of this paragraph, coverage provided under this Policy will follow the terms, definitions, conditions, exclusions and limitations of the first underlying insurance as described in the 'scheduled underlying insurance.'" Id. (emphasis added). SRCS Elite notes that in a situation like this, where the "retained limit" is only comprised of "other insurance," and there is no applicable

"scheduled underlying insurance," under the exception language there are no terms for the SRCS policies to follow.

Indeed, this is a conundrum. However, rather than proving SRCS Elite's position, it indicates ambiguity within the pollution exclusion which the Court must resolve in Plaintiffs' favor, and prevents the Court from granting judgment on the pleadings in favor of SRCS Elite. Donegal Mut. Ins. Co., 938 A.2d at 290. SRCS Elite seeks to alter the plain meaning of the term "retained limit" to fix its infirm pollution exclusion language. However, it is the pollution exclusion that requires reformation, not the "retained limit" definition.

Courts will "endeavor to find an interpretation" of an ambiguous term that avoids absurd or ineffective results. Laudig v. Laudig, 624 A.2d 651, 654 (Pa. Super. 1993) (quoting Pocono Manor Ass'n v. Allen, 12 A.2d. 32, 35 (Pa. 1940)). Here, Plaintiffs provide a reasonable interpretation of the pollution exclusion exception that alleviates the incongruity between it and the definition of "retained limit": to the extent coverage under the exception is triggered by "retained limits" consisting only of "other insurance," that coverage should follow the terms, definitions, conditions, exclusions and limitations of the applicable "other insurance." See Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 321 (3d Cir. 2011) ("Ambiguous provisions in an insurance policy must be construed against the insurer and

in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." (quoting <u>Med. Protective Co. v. Watkins</u>, 198 F.3d 100, 104 (3d Cir. 1999))).

The Court further notes that the original pollution exclusion in the policies, which was superseded by the infirm version discussed above, provides that the exceptions to the exclusion:

> apply to the extent that such coverage is provided by "<u>scheduled underlying insurance</u>" or would have been provided but for the exhaustion of the applicable limits of such "<u>scheduled underlying insurance</u>" by the payment of "loss" covered by this policy; provided, however, that coverage provided by this policy will be no broader than coverage provided by such "<u>scheduled underlying insurance</u>."

ECF No. 21-2, p. 17 (emphasis added). Unlike the superseding pollution exclusion, this original version was only triggered by the existence of "scheduled underlying insurance." The superseding exclusion, however, is broader and the exception is controlled by the existence of "retained limits" which includes "other insurance," not just "scheduled underlying insurance." Thus, had SRCS Elite intended the exception to be triggered only by "scheduled underlying insurance," it certainly could have done so (having done so originally).

It is only imprecise drafting in the superseding pollution exclusion that leaves the parties without guidance regarding what terms control in the event the exception is triggered. The

pollution exclusion is ambiguous, and the Court will therefore construe it in favor of Plaintiffs. Donegal Mutual Ins. Co., 938 A.2d at 290. And to prevent the policies from being ineffective, the Court adopts Plaintiffs' construction of what terms apply when the "retained limit" is set solely by "other insurance." Am. Auto. Ins. Co., 658 F.3d at 321. Otherwise, the definition of "retained limit" is plain on its face and Plaintiffs have proffered the correct interpretation of that term. Thus, the Court will deny Defendant's motion for judgment on the pleadings on Counts I and V of the amended complaint.

B.   **Plaintiffs' Motion for Judgment on the Pleadings**

Plaintiffs seek judgment on the pleadings regarding SRCS Elite's duty to defend Plaintiffs in the underlying lawsuits. The polices describe the duty to defend as follows:

> We will have the right and duty to defend the "insured" against any "suit" claiming damages for "bodily injury," "property damage" or "personal and advertising injury," even if meritless, false or fraudulent, to which this insurance applies when:
>
> 1. the applicable limits of "scheduled underlying insurance" have been exhausted by payment of "loss" to which this policy applies and the total applicable limits of "other insurance" have been exhausted; or
>
> 2. damages claimed for "bodily injury," "property damage" or "personal and advertising injury" are
>
>   a. not covered by "scheduled underlying insurance" or any "other insurance," and

b. the applicable Self-Insured Retention has been exhausted by payment of "loss" covered by this policy.

ECF No. 21-2, p. 9.

The parties disagree on the meaning of the duty provision and their arguments mirror those made in relation to "retained limits," discussed above. As a result, Plaintiffs again proffer the correct interpretation of this language and, thus, are entitled to judgment on the pleadings regarding SRCS Elite's duty to defend in the underlying actions.

"[A]n insurer's potential duty to defend is 'determined solely by the allegations of the complaint in the [underlying] action.'" Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 678 (3d Cir. 2016) (quoting Kvaerner Metals Div., 908 A.2d at 896). Here, the Court concludes that a reading of the complaints in the underlying actions clearly indicate that they seek damages and injunctive relief in relation to bodily injury and property damage.[8] See ECF No. 26-2, ¶¶ 55, 69 (the class action complaint alleging that the lead leaching "has threatened the health of Plaintiffs and Class members, and exposes them to injury and the

---

[8]    The SRCS Elite policies define "bodily injury" as "bodily injury, sickness or disease" including "mental anguish or mental injury resulting from 'bodily injury'" and define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." ECF No 21-1, pp. 23 & 26.

fear of future injury" and "Aqua's actions and inactions . . .
interfered with their use and enjoyment of [the Class Members']
properties"); ECF No. 26-3, p. 28 (the State of Illinois
complaint, alleging that Plaintiffs "caused the release of lead
into the Public Water System, thereby threatening harm to
Village residents and interfering with their use and enjoyment
of the water").

Regarding the parties' interpretations, Plaintiff
interprets the language of the first duty trigger as meaning
that the duty to defend arises when the <u>applicable</u> limits of
"scheduled underlying insurance" have been exhausted by the
payment of "loss" <u>and</u> the total applicable limits of "other
insurance" have been exhausted. Thus, Plaintiffs contend that
since there are no <u>applicable</u> limits from any of the "scheduled
underlying insurance" (as discussed above) and the total
applicable limits of the Chubb policy (which is "other
insurance") have been exhausted, SRCS Elite's duty to defend has
been triggered. This is the correct, plain, and literal
interpretation of the policy language.

Regarding the first duty trigger, SRCS Elite makes an
argument similar to the one rejected above. It contends that <u>all</u>
"scheduled underlying insurance" must be exhausted, regardless
of whether it is applicable, before its duty to defend arises.
Here, given that the "scheduled underlying insurance" can never

be exhausted because it does not apply to this situation, SRCS Elite argues that the duty can never arise under the first trigger provision. Alternatively, under the second duty trigger, SRCS argues that the duty can be triggered if there is no "scheduled underlying insurance" but Plaintiffs have paid the ten million dollar "Self-Insured Retention" (which the parties agree has not happened).

As discussed above, this interpretation conflicts with the clear language of the policies in that it ignores the word "applicable." Even as to the second duty trigger, SRCS ignores that it is only applicable when there is neither applicable "scheduled underlying insurance" nor applicable "other insurance." Again, SRCS Elite's interpretation of the duty to defend provision guarantees that SRCS's duty would never trigger assuming the existence of any inapplicable "scheduled underlying insurance" or "other insurance."

SRCS Elite also argues that because "loss" is defined differently under its policies and the Chubb policy,[9] the Chubb policy was not exhausted by payment of "loss" as defined in the SRCS Elite policies. This argument is largely inapplicable since

---

[9]     SRCS Elite contends that the Chubb policy defines loss as including, inter alia, attorneys' fees, while the SRCS Elite policies define "loss" as sums paid in settlement or in satisfaction of a judgment, and do not include attorneys' fees. See ECF No. 21-2, p. 24.

SRCS Elite owes Plaintiffs a duty to defend under the first duty trigger provision. Regarding "other insurance," the duty to defend language does not reference "loss." It merely provides that the duty is triggered when the total applicable limits of "other insurance" have been exhausted, which has happened in this case. The additional requirement that the limits be exhausted by "loss" is reserved exclusively for when there is either applicable "scheduled underlying insurance," or when there is neither applicable "scheduled underlying insurance" nor applicable "other insurance," which is not the case here.

In that Plaintiffs have proffered the plain meaning of the duty to defend provision, and have shown that it has been triggered by the exhaustion of the Chubb policy, they are entitled to judgment as a matter of law on the issue of SRCS Elite's duty to defend.

## IV.   CONCLUSION

Because the exception to the pollution exclusion in the SRCS Elite policies creates coverage for the underlying lawsuits and because SRCS Elite owes Plaintiffs a duty to defend, SRCS Elite's motion for judgment on the pleadings will be denied and Plaintiffs' motion for judgment on the pleadings will be granted.

An appropriate order follows.